## 12359.  OETGEN *v.* THE STATE.

In a prosecution based on section 553 of the Penal Code (1910), it is a good defense for the accused to show that payment of a bank check, given in payment for farm, orchard, or dairy products, was refused by the drawee bank, when presented for payment, solely because, after the giving of the check and prior to its presentation for payment, the drawer of the check was placed in involuntary bankruptcy, and his funds in the bank, which were sufficient to pay the check, were seized by a receiver appointed to take charge of the bankrupt's property.

DECIDED JUNE 14, 1921.

Accusation of misdemeanor; from city court of Cairo — Judge Rigsby.  February 28, 1921.

*S. P. Cain, E. D. Rivers, Hugh Howell,* for plaintiff in error.

*Ira Carlisle, solicitor,* contra.

BROYLES, C. J.  Section 553 of the Penal Code of 1910 provides that, "if any person shall buy any of the products mentioned in the preceding section [any farm, orchard, and dairy products in this State], either for himself or others, and give a draft, check, or order in payment of such products, and the payment of the draft, check, or order is refused by the drawee, by

which the seller sustains loss, such buyer shall be guilty of a misdemeanor." This code-section embodies section 2 of the act approved December 16, 1895, entitled "An act to prevent the procurement of consignments of farm, orchard, and dairy products to parties who fail to account to the rightful owner of such products for the proceeds arising from the sale thereof, and for other purposes." Ga. L. 1895, p. 65. The first section of the act is as follows: "That any person or persons who shall solicit or in any way procure consignments of fruits, melons, vegetables, butter, eggs, poultry, or other farm, orchard, and dairy products in this State, whether for themselves or as agents or employees of others, to irresponsible persons, firms, or corporations, to be sold on commission, and who shall fail to account for, and pay to the rightful owner the whole net proceeds arising from the sale of such products so consigned, said person or persons soliciting or otherwise obtaining such consignments shall be guilty of a misdemeanor." It is obvious that the primary purpose of this act was to protect the producers and sellers of the products mentioned therein from *irresponsible* or *dishonest* persons, firms, or corporations — "fly by night," "here to-day and gone to-morrow," concerns, which, without any capital or business standing, preyed upon and swindled the farmers of the State. In our opinion, it was not the intention of the legislature to make the provisions of the act apply to persons, firms, or corporations that conducted stable and legitimate business, and whose reputations for fair and honest dealings were well established, and whose checks or drafts were good when given, but, through financial reverses of the makers, became worthless before they were presented for payment to the drawee. It is a matter of common and general knowledge, to which this court will not close its eyes and ears, that in many instances responsible and honest persons, firms, or corporations are, through misfortune alone, unexpectedly placed in involuntary bankrupcty and all their assets wiped out, thereby causing their good checks and drafts, previously given in good faith, to become worthless before presentation for payment. In our opinion, the lawmaking body, when it enacted this statute, did not intend it to apply in such instances. We think that any other construction of the statute would be contrary to the legislative intendment in its enactment, for unless so construed it

would obviously in many instances result in the conviction of responsible and honest dealers in the products mentioned, who had no intention whatsoever of defrauding the producers and sellers thereof.

It therefore follows that where one is being tried under an accusation based upon this statute, it is a good defense for him to show that the sole reason for refusal of payment of a check given for payment of the products mentioned was that after the giving of the check and prior to its presentation to the bank for payment the drawer of the check was placed in involuntary bankruptcy, and his funds in the bank, which were sufficient to pay the check, were seized by a receiver appointed to take charge of the bankrupt's assets, and that the check would have been paid if the seller of the products had presented it for payment before the seizure of the funds. The law having taken his money which he had put in the bank to meet this check, he should not be held criminally liable for the subsequent refusal of the bank to pay the check when presented. See, in this connection, *Floyd* v. *Cook*, 118 *Ga.* 526 (45 S. E. 441, 63 L. R. A. 450).

Under the foregoing rulings and the facts of the instant case, the court erred in excluding from evidence a certified copy of the bankruptcy proceedings, showing that the Moore & Oetgen Company (the drawer of the checks in question) was adjudged an involuntary bankrupt, and that a receiver was appointed to take charge of its property. While the record does not disclose that the documentary evidence rejected was in itself sufficient to show that the company had enough funds in the drawee bank, at the time the receiver took charge of them, to pay the checks in question, it was admissible because it tended to corroborate the defendant's statement to the jury that the company did at that time have sufficient funds in the bank to pay the checks, and that they would have been paid if presented before the appointment of the receiver. On account of the error in excluding this evidence, a new trial becomes necessary.

There is no substantial merit in any of the other grounds of the amendment to the motion for a new trial; and, as there must be another trial of the case, the general grounds of the motion are not passed upon.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*