17082

THE STATE, Respondent, v. T. I. SUTTON, Appellant
(89 S. E. (2d) 874)

*Messrs. Gardner & Gardner,* of Darlington, and *J. M. Broughton* and *Stanley Seligson,* of Raleigh, N. C., *for Appellant,*

*Messrs. R. L. Kilgo, Solicitor,* and *Sam Royal,* of Darlington, *for Respondent.*

November 7, 1955.

STUKES, Justice.

Appellant was convicted of violation of the "bogus check" law and has appealed. Sections 8-176, 8-177 and 8-178, Code of 1952. He was an automobile dealer in Raleigh, North Carolina, and during a period of over a year made several purchases of automobiles at the auction sales of the prosecuting witness at Darlington. The last was on February 5, 1953, when appellant bought three automobiles for which he gave three separate checks aggregating $5,815.00 on a Raleigh bank. Payment was refused by the drawee bank and the checks returned with the information that the account was closed. The evidence tends to show that the payee then called appellant over the telephone and was instructed by the latter to enter on the face of the checks the notation

"West Side Branch," and return them for presentation to that bank, where appellant maintained a deposit account. There was evidence that he had negotiated for a loan by the bank on the day before he left for Darlington where he purchased the automobiles and gave the checks in payment. However, payment of the checks was again refused, this time for insufficient funds. In May following written notice of the dishonor was mailed to appellant and he failed to pay the amount of them.

The testimony will not be further reviewed because of the necessity for new trial and no opinion is intimated as to the probative value of it upon the issues, except to say that it was sufficient to support the verdict of guilty. The failure of appellant to pay the checks within seven days after written notice of their dishonor raised a presumption of fraudulent intent in the issuance of them perforce the statute which will be quoted hereinafter, and it was for the jury to decide the issue of the existence of the intent. It was said in *Turner v. Montgomery Ward & Co.,* 165 S. C. 253, 163 S. E. 796, 799: "We think this provision of the law merely creates a rule of evidence to the effect that the facts mentioned will, though standing alone, give rise to the presumption of fraudulent intent." Appellant's motion for direction of verdict of acquittal was properly refused, which disposes of his second question on appeal.

The other assignment of error must be sustained. It arises from the exclusion of evidence proffered by appellant that subsequent to the giving of the checks and prior to the written notice to him under Code Section 8-177, he was adjudicated a bankrupt. The cited section provides in part as follows:

"The fact that such check, draft or order was not paid by the drawee because the maker or drawer did not have on deposit with the bank or person upon which such draft, check or order was drawn sufficient funds to pay the same in full when presented and the further fact that the maker or drawer of such check, draft or order failed to pay the

amount of the same within seven days after written notice sent to his last known address shall, as against the maker or drawer of such check, draft or order, be *prima facie* evidence of fraudulent intent."

It is seen that the refusal by the drawee to pay the checks on account of insufficient funds, coupled with the failure of the maker or drawer to pay same within seven days after written notice, is made by the statute, quoting again, *"prima facie* evidence of fraudulent intent." It follows that inability to pay resulting from bankruptcy may be considered by the jury in rebuttal of the statutory presumption of fraudulent intent in the uttering of the checks; and such intent is a necessary ingredient of the crime. The excluded evidence was competent to go to the jury because it tended to negative the statutory presumption.

The prosecution did not have to follow the procedure outlined in Sec. 8-177, but having done so and having relied upon the *"prima facie* evidence" of it, the intervening bankruptcy became relevant to rebut it. We do not hold that it would otherwise have any relevancy upon the intent with which appellant uttered the checks.

It was held in *Oetgen v. State,* 1921, 27 Ga. App. 177, 107 S. E. 885, that the subsequent involuntary bankruptcy of the drawer of a bad check was a defense to prosecution under the statute of that State; but we do not go that far in the case in hand. Our holding, as said above, is that the fact of the bankruptcy should be admitted in evidence in this case as tending to rebut the presumption which was created by Sec. 8-177, in view of the State's reliance upon the latter.

The Georgia decision, just referred to, is the only pertinent authority cited in appellant's brief. (The State did not file a brief, although the solicitor was assisted by other counsel.) Illustrations of other evidence which has been held relevant to rebut a statutory presumption of fraudulent intent may be found in the cases collected in the annotation in 95 A. L. R. 486, 490.

There can be no doubt of the necessity of fraudulent ■ intent to constitute the offense under the statute as enacted in 1923. 33 Stat. 120. *State v. Moore,* 12? S. C. 192, 122 S. E. 672.

Reversed and remanded for new trial.

TAYLOR, OXNER and LEGGE, JJ., concur, and J. WOODROW LEWIS, Acting Associate Justice, disqualified.