47649. MARSHALL v. THE STATE.

ARGUED NOVEMBER 8, 1972—DECIDED DECEMBER 1, 1972—REHEARING DENIED DECEMBER 20, 1972—

*Conger & Conger, J. Willis Conger,* for appellant.

*A. Wallace Cato, District Attorney,* for appellee.

CLARK, Judge. This appeal is from a felony conviction for violation of *Code Ann.* § 5-9914 (Ga. L. 1959, pp. 143, 144) in failing to pay upon purchase of livestock. This statute is known in the agriculture industry[1] as "The Prompt Payment Act." For more than 15 years defendant had been a regular buyer at the weekly auction sales conducted each Friday by the Flint River Livestock Auction which was the trade name under which Ralph Nichols operated. Accused contended he was not guilty because the payment arrangements which existed between him and the seller came within the statutory exclusion of credit sales of agricultural products and naval stores. The seller's testimony was that Marshall's purchases were normal business routine, which he described as follows: "He bought livestock there and was to mail me a check just like anybody else. . . He was supposed to mail it [the check] on Saturday or Monday. . . Q. And you didn't extend credit to this man at all? A. No, sir, him nor nobody else. Q. Well now when you told him he could buy the stuff today and mail you a check Saturday, or Monday or sometime the following Wednesday, that wasn't extending credit? A. No, sir. That's general procedure with any livestock market, that all the buyers can mail checks but that's not considered credit. Q. What is it considered? A. Well that's a cash transaction." (T., 12, 13)

According to the evidence there was a time lag from date of sale to date of deposit of 13 to 14 days in 15 transactions, 17 days in 2 transactions, and 12 days in 1 transaction. Defendant mailed his checks somewhere between Friday and Wednesday with Flint River Livestock Auction holding the checks until it made its weekly deposits.

---

[1]The importance to Georgia of this statute is shown in the information obtained from Commissioner of Agriculture Thomas T. Irwin that in 1971 livestock sales in our State exceeded $236,808,000 with such sales amounting to almost 20% of the total of our State's agricultural income.

Checks were usually dated as of the sale day.

Somewhat unusual was the custom of defendant's bank to honor his checks despite the account being overdrawn. This practice was discontinued in February 1970 without prior notice when the bank made an audit of defendant's business and those checks dated February 20 and 27 were dishonored and returned. Before Flint River Livestock Auction received such notification defendant bought livestock on March 6 for $22,563.64 for which no check was mailed. There was evidence indicating defendant had been insolvent since January 1 but there was a dispute as to whether defendant actually knew the precarious state of his finances. This information developed during a creditor's hearing at the defendant's involuntary bankruptcy proceedings which had been instituted on March 16.

■ The trial court overruled a demurrer attacking the indictment because "Flint River Livestock Auction" was a trade name and not an individual or purporting to be a corporation. It is necessary for the indictment to be perfect in form and substance in order that "the accused must be apprised by the indictment, with reasonable certainty of the nature of the accusation against him, to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense." This language is taken by *Kyler v. State,* 94 Ga. App. 321, 324 (94 SE2d 429) from United States v. Simmons, 96 U. S. 360 (24 LE 819). In accord, *McKee v. State,* 200 Ga. 563 (37 SE2d 700). The requisites of (1) giving accused the information necessary for defense and (2) protecting accused from double jeopardy were satisfied here where accused had dealt for more than 15 years with Ralph Nichols under this trade name, had designated the trade name as payee on his checks, and there was no other business operating under that name in the Flint River area. Under these circumstances, defendant has not been prejudiced, so we hold the trial court correctly overruled the demurrer.

■ Does the evidence here sustain the defense that the transactions came within the exception in the statute in

that credit was extended? In *Troup v. State,* 209 Ga. 9 (70 SE2d 470) the Supreme Court discussed the application of this statute to situations where deliveries are made prior to the time of payment. It concluded (Hn. 1) that "In a prosecution under Code § 5-9914, whether a sale is for cash [or credit] is determined by the intention of the parties from the agreement, understanding, or circumstances connected with the transaction." The decision is for the jury to decide when there is a conflict. *Wilson v. State,* 215 Ga. 775 (113 SE2d 607); *Mallette v. State,* 119 Ga. App. 24 (165 SE2d 870). The jury in the case sub judice accepted the State's version that this was a cash transaction. Our case differs from *Oetgen v. State,* 27 Ga. App. 177 (107 SE 885), in that there the check was not honored because of an involuntary bankruptcy but with sufficient funds on deposit, whereas here there was no check tendered for the specific sale designated in the indictment, and checks for the purchases made on the sale day for the two previous weeks were dishonored for lack of funds. Enumerations 1, 2, 3, and 7 seeking a new trial upon the general grounds and enumeration 6 complaining of the court's refusal to grant defendant's motion for a directed verdict are without merit.

■ The remaining enumeration of error contends the trial judge erred in stipulating the defendant's probation to be contingent upon his making restitution to the aggrieved party of the amount of $13,538.19 in that this would constitute a violation of the provisions of 18 USCA § 152, Par. 4. That section of the bankruptcy law makes it a crime for one to "knowingly and fraudulently" receive property from a bankrupt "after the filing of a bankruptcy proceeding with intent to defeat the bankruptcy law." This section is inapplicable to the facts sub judice. Fraud on the part of Mr. Nichols is not here involved as the defendant does not in making restitution transfer any property or assets that he possessed prior to bankruptcy. Other creditors do not lose the benefit of any asset that should have been scheduled. The fact that Nichols filed his claim in the bankruptcy proceedings and was partially recompensed does not

prevent the judge here from making the probation contingent upon futher reimbursement to make the creditor whole.

Voluntary payment by a bankrupt from after-acquired assets as well as revivor of his obligation by a new promise in writing is permissible. "[A] debt barred by discharge in bankruptcy may be revived by a new promise made after the discharge. . . It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. . . The theory is that the discharge destroys the remedy but not the indebtedness; that, generally speaking, it relates to the inception of the proceedings, and the transfer of the bankrupt's estate for the benefit of creditors takes effect as of the same time; that the bankrupt becomes a free man from the time to which the discharge relates, and is as competent to bind himself by a promise to pay an antecedent obligation, which otherwise would not be actionable because of the discharge, as he is to enter into any new engagement." Zavelo v. Reeves, 227 U. S. 625, 629 (33 SC 365, 57 LE 676). In accord are *Dicks v. Andrews,* 132 Ga. 601 (1) (64 SE 788, 16 AC 1070) and *Moore v. Trounstine,* 126 Ga. 116 (54 SE 810, 7 AC 971).

Furthermore, our State-Wide Probation Act says that "The court shall determine the terms and conditions of probation and may provide that the probationer shall . . . (7) make reparation or restitution to any aggrieved person for the damage or loss caused by his offense in an amount to be determined by the court." *Code Ann.* § 27-2711. In *Falkenhainer v. State,* 122 Ga. App. 478, 480 (177 SE2d 380) this court pointed out our statute was not exclusive in its provisions and that "the court has authority to impose restrictions not specifically listed therein. *Gay v. State,* 101 Ga. App. 225 (1)."

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*