22938. BRITTEN v. THE STATE.

ARGUED MAY 10, 1965—DECIDED MAY 31, 1965—REHEARING DENIED JUNE 14, 1965.

*J. Gordon Young, Roberts & Thornton, Jack M. Thornton, Lee R. Grogan,* for plaintiff in error.

*W. B. Skipworth, Solicitor General, Eugene Cook, Attorney General, J. R. Parham, Assistant Attorney General,* contra.

CANDLER, Justice. Earnest Britten was indicted in Muscogee County for the murder of James Lee McBride. When his case was called for trial, he waived formal arraignment, copy of the indictment, list of the witnesses sworn against him before the grand jury and entered a plea of not guilty. He was convicted of murder without recommendation and was sentenced to be electrocuted. His amended motion for a new trial was overruled and he excepted to that judgment.

1. The first special ground of the motion for new trial alleges that the court, on motion therefor, erred in refusing to continue movant's case. This motion was made before arraignment. The same ground also alleges that the court erred in refusing, after the State had introduced its evidence and rested, to grant defendant's motion for a mistrial and a continuance of the case. These motions were based on the ground that one of his attorneys was absent. Respecting this, the record shows: The court appointed J. Gordon Young, Owen G. Roberts, Jr. and L. W Grogan, three members of the Columbus Bar, to represent the accused. Neither was appointed "leading counsel." They are all capable and experienced lawyers. At a term of the court prior to the one at which the accused was tried, the court on motion therefor, continued the case to give counsel ample time for trial preparation. When the case was regularly called for trial, Mr. Roberts was trying another case in the civil division of the same court and for that reason could not assist other counsel in the trial of this case. The motions for continuance and mistrial were based solely on his absence. The record, however, shows that Mr. Jack M. Thornton, Mr. Roberts' law partner, was present for the purpose of assisting in the trial, and that he did actively aid in the trial. Applications for continuance are addressed to the sound legal discretion of the court, and, if not expressly provided for, shall be granted or refused as the ends of justice may require. *Code* § 81-1419. Clearly, this special ground of the motion presents no cause for a new trial.

2. Another special ground of the motion alleges that a new trial should be granted movant because the solicitor general on

demand therefor refused to furnish the accused with a list of the witnesses whom he expected to use on the trial. This ground of the motion is not meritorious. The Constitution of this State requires the solicitor general, on demand therefor, to furnish the accused with a list of the witnesses on whose testimony the charge against him was founded (*Code* § 2-105) but the law does not require the solicitor general to furnish the accused with a list of all of the witnesses he expects to use on the trial. *Keener v. State,* 18 Ga. 194 (2) (63 AD 269); *Inman v. State,* 72 Ga. 269 (1); *Echols v. State,* 101 Ga. 531 (1) (29 SE 14); and *Evans v. State,* 210 Ga. 375 (1) (80 SE2d 157). In the instant case the record shows that the accused made no demand for a list of only those witnesses who testified against him before the grand jury; and prior to being placed on trial, he waived in writing a list of the witnesses upon whose testimony the charge against him was founded.

3. "When any person shall stand indicted for a felony, the court shall have impaneled 48 jurors, 24 of whom shall be taken from the two panels of petit jurors from which to select a jury. . . ." *Code Ann.* § 59-801. When the instant case was called for trial 48 jurors were impaneled and put upon the accused. They were sworn and the regular voir dire questions were propounded to them. During such examination, one stated that he was a member of the grand jury which indicted the accused and he was excused from service. A special ground of the motion for new trial alleges that the court erred in refusing his request then to call another juror from some other panel to replace him. There is no merit in this contention. Section 59-801 of the Code of 1933 declares that in all felony cases 48 jurors shall be impaneled and put upon the accused at the beginning of his trial; but if any one or more of the 48 are found to be disqualified for any cause the judge is not required at that time to replace him with another juror not on the four panels of 12 each put upon him. However by an Act approved February 19, 1951 (Ga. L. 1951, pp. 214, 216) *Code* § 59-705 was repealed and Section 2 of the 1951 Act (*Code Ann.* § 59-705) provides in part ". . . in all criminal cases both the State and the defendant shall have the right to an individual examination of each juror from which the jury is to be selected prior to interposing a challenge." Section 59-801 of the Code of 1933

and Section 2 of the Act of 1951 are in pari materia and should be construed together and when thus construed they mean that the defendant in a felony case is entitled to have 48 qualified jurors put upon him, each of whom he may individually examine or question prior to interposing a challenge. And when 48 qualified jurors cannot be obtained from the original four panels put upon the accused at the beginning of his trial, the judge shall continue to furnish additional panels of such number as he thinks proper (*Code* § 59-801) until 48 qualified jurors are obtained who shall then be put upon the accused. No contention is here made that 48 qualified jurors were not put upon the defendant prior to the time he was required to exercise his peremptory strikes. What is here ruled is in harmony with the decisions in *Waller v. State*, 213 Ga. 291 (2) (99 SE2d 113); *Blount v. State*, 214 Ga. 433 (3) (105 SE2d 304); and *Ferguson v. State*, 218 Ga. 173 (1) (126 SE2d 798). *Whitworth v. State*, 155 Ga. 395 (1) (117 SE 450) does not require a holding different from the one here made since that case was decided prior to the passage of the aforementioned Act of 1951.

4. When the State concluded the introduction of evidence and rested, counsel for the accused announced that he would also rest. At this time the solicitor general asked the court to reopen the case and allow him to introduce two other witnesses, namely, Cobb Britten, Jr. and Cobb Britten, Sr. whose testimony, as he stated to the court, had been overlooked by him. His request was granted over objection by the accused that the State had rested its case and the introduction of further evidence by the State would be improper for stated reasons. His objection was overruled and the witnesses were allowed to testify. The witness Cobb Britten, Jr. testified that he and his brother Earnest Britten while drinking heavily agreed with each other to rob the Beverage Vault Package Store in Columbus, Georgia, which the deceased was operating; that he (Cobb, Jr.) pushed the deceased into a back room of the liquor store; that his brother Earnest got out his knife and went into the room where McBride was; that he tried to open the cash register but was unable to do so and his brother Earnest brought McBride back into the main room of the store to open the cash register; that his brother then pushed McBride back into the rear room of the liquor store; that he could hear fighting and stumbling in the back room but he did not know McBride was stabbed until he looked back there and

saw blood; that the defendant Earnest Britten, after they left the liquor store, showed him a pistol which he said he had taken from the counter near the cash register in the liquor store and that they took during the robbery a stated sum of money from the liquor store and later equally divided it. Cobb Britten, Sr. testified that he was the father of the defendant Earnest Britten and Cobb Britten, Jr.; that Earnest went to the 10th grade in school and Cobb to the 11th; that he went with Attorney Young to the jail where his sons were confined for the murder of McBride; that he advised his sons to tell the attorney the truth about the robbery and murder; that Cobb, Jr. stated to the attorney, in the presence of the defendant Earnest Britten, that they had committed the act jointly but that the defendant Earnest Britten was the one who actually stabbed McBride; that the defendant Earnest Britten at that time made no denial of Cobb, Jr.'s statement; and that the defendant Earnest Britten left Columbus during the night following the robbery and the killing of McBride. After these two witnesses had testified, the accused moved to exclude their evidence on the ground that it was given after the State had rested and that it was not in rebuttal of anything offered by the defendant. This motion was overruled. The amended motion for new trial assigns error on the orders overruling his objection and his motion to rule out the testimony of the two witnesses who were permitted to testify after the State rested, and after the defendant had announced that he would also rest without offering evidence or making any statement to the jury. There is clearly no merit in this assignment of error. In the early case of *Bigelow v. Young,* 30 Ga. 121, it was held that "It is within the discretionary power of the court to allow a witness to be sworn after the evidence on both sides has been announced closed and the argument has been commenced; and a liberal practice in this respect is most favorable to the ends of justice." And in *Burden v. State,* 182 Ga. 533, 534 (3) (186 SE 555), this court unanimously held that it was within the discretionary power of the trial judge to reopen the case and allow the State to introduce further testimony even though such testimony was not in rebuttal of evidence offered by the defendant or his statement to the jury. These principles which are applicable both to civil and criminal cases are so well settled as to require

no further elaboration here, but we refer in passing to the cases of *Reid v. State,* 23 Ga. 190; *White v. State,* 100 Ga. 659 (28 SE 423); *Powell v. State,* 101 Ga. 9 (29 SE 309, 65 ASR 277); *Frazier v. State,* 112 Ga. 868 (4) (38 SE 349); *Strickland v. State,* 115 Ga. 222 (41 SE 713); *Merritt v. State,* 168 Ga. 753 (149 SE 46); *Sims v. State,* 195 Ga. 485 (6) (25 SE2d 1); *Smith v. State,* 196 Ga. 595 (4) (27 SE2d 369).

5. While Robert L. Knox, a detective for the City of Columbus, was being directly examined, he was asked by the solicitor general if he told the defendant when taken into custody that he was under investigation for the robbery and murder which occurred at the Beverage Vault Package Store in Columbus, Georgia. The witness replied: "Yes, sir—the first word that was said after he got in the car—he said: 'I shouldn't have run in the first place. I should have known I would have got caught eventually.' That's when I told him—I said—'we should wait until we get to Columbus before we talk about it;—well, you are in serious trouble; we've picked you up on an auto theft warrant; you are also going to be held for investigation of robbery and murder at the Beverage Vault Package Store on 4th Avenue.'" Immediately after this answer was given, counsel for the accused moved for a mistrial on the ground that the State had by that portion of the evidence concerning a charge against the accused for auto theft, put his character in evidence when he had not elected to do so. The solicitor general then stated to the court that he did not contend that the accused was guilty of auto theft and the court instructed the jury to ignore the witness' reference to the charge of auto theft against the accused and to confine its consideration to the offense for which he was then on trial. Since that portion of the witness' testimony which tended to show that the defendant was charged with auto theft was not in response to the question propounded to him by the solicitor general and since the trial judge instructed the jury to ignore it and to confine its consideration to the offense charged against the accused, we cannot hold that the court erred in overruling the defendant's motion for a mistrial. As authority for this ruling, see *Burns v. State,* 191 Ga. 60 (9), 74 (11 SE2d 350); *Carrigan v. State,* 206 Ga. 707 (3) (58 SE2d 407); and the cases there cited.

6. The remaining special grounds of the motion for new trial complain about the admission of an incriminating oral statement the accused made to police detective Robert L. Knox in the presence of Sam Featherston, another police detective, and also to the allowance in evidence of a signed admission the accused gave those two officers in which he admitted that he participated in robbing the Beverage Vault Package Store in Columbus, Georgia during the commission of which robbery McBride was killed. The objection made thereto was that their use as evidence would violate enumerated State and Federal constitutional rights of the accused namely, the guarantee of counsel and the inhibition against coerced or compulsory self-incrimination. In the absence of the jury, the court heard evidence as to the voluntariness of the oral statement and the written admission. Respecting the oral statement, Knox, a witness for the State, testified: The Beverage Vault Package Store in Columbus, Georgia, was robbed on March 4, 1964, and James Lee McBride, the operator, was stabbed to death during the course of the robbery. Earnest Britten was arrested on May 1, 1964 in Carroll County, Georgia, on burglary charges pending against him in that county. After his arrest in Carroll County, a warrant charging him with auto theft in Muscogee County was sent to the officers of Carroll County by arresting officers of Columbus, Georgia. Agents of the Georgia Bureau of Investigation and a deputy sheriff delivered the accused to witness and officer Featherston in Franklin, Georgia on May 5, 1964. Within less than five minutes after he was turned over to them and before they had reached the city limits of Franklin, the accused stated that he ought not to have run and that he should have known that he would be caught eventually. Witness told the accused that he was charged with auto theft in Muscogee County and was wanted for investigation concerning a robbery at the Beverage Vault Package Store in Columbus and for the murder of McBride which occurred during the course of such robbery. He told the accused that he was in serious trouble and that he should make no statement before they got to Columbus and until he had contacted a lawyer. The accused replied by saying that he was guilty of the robbery but not of the murder—that his brother Cobb had done the killing. The ac-

cused then stated to him, "You don't need a lawyer when you are guilty; that he had rather go ahead and talk about it now; that he wasn't guilty of murder but was guilty of robbery." While en route to Columbus from Franklin, the accused again freely and voluntarily stated that he participated in the robbery; that he got McBride's pistol; and that he also got either one hundred and seventy-two or one hundred and seventy-three dollars of the money taken from the package store. He also told Knox that he pawned McBride's pistol in Macon at a named place of business and the evidence shows that it was picked up on the day of his return to Columbus at such place.

As to the written statement of the accused, Knox testified: It took about two hours to drive from Franklin to Columbus. The accused was repeatedly advised during that time that he had better get him a lawyer before he made any statement. He continued to say that he was guilty of the robbery but not of the murder and for that reason he did not need a lawyer. Within two or three hours after the accused was returned to Columbus and as soon as it could be reduced to writing, the accused signed a statement in which he admitted his participation in the robbery at the Beverage Vault Package Store but denied that he aided or assisted his brother in killing McBride.

In his unsworn statement to the jury the accused said that he was 22 years old and that he recalled the occasion when he and his brother were "in this difficulty at the liquor store." He also told the jury that he tried, at his brother's direction, to open the cash register in the store but was unable to do so; that he picked up McBride's pistol from the floor of the liquor store and put it in his pocket; and that he did not aid or assist his brother, Cobb Britten, Jr., in killing McBride. After concluding his statement to the jury and in response to a question propounded to him by one of his attorneys, he said that he asked for a lawyer immediately after he was turned over to officers Knox and Featherston in Franklin, Georgia—that he asked them at that time to call his father so he could secure a lawyer for him; and that they told him they would get him a lawyer after he had given them a statement. In response to another question propounded to him by one of his attorneys, he said that he was *involved* in the robbery but did not aid or assist

his brother in killing McBride. His attorney then asked him if the statement he gave officers Knox and Featherston was in substance true. He replied, "Yes." The statement to which he referred recites that it was freely and voluntarily made without threats or promises of any kind being made to him and after he had been advised that it could be used in a court of law against him.

Since the defendant, in answer to questions propounded to him by one of his attorneys after he had concluded his statement to the jury, admitted that the oral statement and the written admission which he had made to officers Knox and Featherston were freely and voluntarily made, we hold that the trial judge did not err, as contended, in allowing them in evidence; and this is especially true since the court in its charge instructed the jury that it could consider the oral statement and the written admission only if it found that they were freely and voluntarily made by the accused. In the circumstances of this case a ruling different from the one here made is not required by the majority decisions of the Supreme Court of the United States in Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908); Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977), since the facts in those cases are materially different from those of the case presently before us for decision. Here, unlike the facts in those cases, the defendant in response to questions propounded to him by one of his attorneys after he had concluded his statement to the jury, freely and voluntarily admitted his involvement in a robbery during the commission of which the homicide of McBride occurred.

7. The general grounds of the motion for new trial are not meritorious. The verdict was amply authorized by the evidence. In *Jackson v. State*, 219 Ga. 819, 822 (136 SE2d 375), this court, quoting from *Gore v. State*, 162 Ga. 267 (134 SE 36), held: "Where three persons conspire to rob a merchant in his store, and one of the conspirators remains in an automobile in front of the store, with the engine running, in order that the three may speedily escape from the scene of the robbery, while the other two enter the store, and, in furtherance of the common design to rob, kill the merchant intended to be robbed, such killing is the probable consequence of the unlawful design to

rob, and all the conspirators are guilty of murder, including the one in the automobile. It is not necessary that the crime of murder should be a part of the original design; but it is enough if it be one of the incidental probable consequences of the execution of their design, and should appear at the moment to one of the participants to be expedient for the common purpose. The intent of the actual slayer is imputable to his co-conspirators." For like holdings, see *Emmett v. State*, 195 Ga. 517 (5), 541 (25 SE2d 9), and the cases there cited.

*Judgment affirmed. All the Justices concur, except Almand, J., who dissents.*

ALMAND, Justice, dissenting. I dissent from the ruling in Division 6 and the judgment of affirmance. In my opinion the decision of the Supreme Court of the United States in the case of Jackson v. Denno, 378 U.S. 368 (84 SC 1774, 12 LE2d 908) is controlling and that decision requires a ruling to the contrary. That case involved the procedure in the State of New York for the determination of the voluntariness of a confession, which procedure is in all respects similar to the Georgia procedure, and is the procedure which was followed in the case at bar. In that case it was held: "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Richmond, 365 U.S. 534, 81 S. Ct. 735, 5 L.Ed.2d 760, and even though there is ample evidence aside from the confession to support the conviction. Malinski v. New York, 324 U.S. 401 (65 S. Ct. 781, 89 L.Ed. 1029); Stroble v. California, 343 U.S. 181 (72 S. Ct. 599, 96 L.Ed. 872); Payne v. Arkansas, 356 U.S. 560 (78 S. Ct. 844, 2 L.Ed.2d 975). Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. Rogers v. Richmond, supra. In our view, the New York procedure employed in this case did not afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and there-

fore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment." Jackson v. Denno, supra, p. 376.

The majority opinion seeks to distinguish this case from Jackson v. Denno on the ground that the defendant in his statement to the jury freely admitted his participation in the offense and there was no evidence to controvert the evidence on the part of the State that the confession was freely and voluntarily made. The reply to this is that the trial judge submitted the question of voluntariness to the jury and the jury was permitted to consider the voluntariness of the confession not separate and apart from the consideration of the other evidence and rendered one verdict on the guilt or innocence of the defendant. In holding this not permissible the court in Jackson v. Denno said: "As we have already said, Jackson is entitled to a reliable resolution of these evidentiary conflicts. If this case were here upon direct review of Jackson's conviction, we could not proceed with review on the assumption that these disputes had been resolved in favor of the State for as we have held we are not only unable to tell how the jury resolved these matters but even if the jury did resolve them against Jackson, its findings were infected with impermissible considerations and accordingly cannot be controlling here. Cf. Rogers v. Richmond, supra. Likewise, a federal habeas corpus court, in the face of the unreliable state court procedure, would not be justified in disposing of the petition solely upon the basis of the undisputed portions of the record." P. 392.

As to the disposition of the case, I would follow the procedure suggested in Jackson v. Denno, viz., reverse the trial court with direction that it impanel a jury, as required in a capital felony case, for the sole purpose of determining whether the alleged confession was or was not voluntarily given, and if the evidence makes a prima facie case of being voluntary to admit it for consideration of the jury and submit the question of voluntariness, with proper instructions, to the jury, if the jury finds that it was voluntarily given the judgment denying a new trial be affirmed, but if either the judge or the jury finds it was not voluntarily given, the judgment denying a new trial be reversed. See *Code* § 6-1610. Compare *Wilson v. State,* 173 Ga. 275 (5e) (160 SE 319).