## 40434. FLOWERS v. THE STATE.

GREGORY, Justice.

The appellant, Donald Flowers, was indicted in Early County for first degree arson and five counts of murder following a fire at a residence in Blakely, Georgia, in which five persons were killed.[1] Following a trial by jury, appellant was found guilty and sentenced to life imprisonment on each count to be served concurrently. He appeals the denial of his motion for a new trial.[2] We affirm.

1. (A) In his first enumeration of error appellant contends that his in-custody statement admitting the crimes should have been suppressed as it was made after an unlawful arrest. Appellant argues his arrest was illegal because it was made without a warrant having been issued and was without probable cause. We disagree.

In *Vaughn v. State,* 247 Ga. 136, 137 (274 SE2d 479) (1981), this court stated, in discussing probable cause at the time of arrest that " '[w]hether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " Citing Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964). In the case before us, the arresting officer had the following information prior to taking appellant into custody. On November 3, 1980, at 12:45 a.m., the Blakely Fire Department received a call to respond to a fire at the residence of Ray Williams. About five minutes later they arrived to find the house totally engulfed in flames. Fire department investigators and a state arson investigator on the scene determined the fire was caused by arson,

---

[1] Those killed in the fire included appellant's estranged wife, the man with whom she was living, appellant's eight-year-old stepchild and two unrelated persons.

[2] The appellant was found guilty on August 19, 1982. Motion for new trial was timely filed and the transcript was prepared and filed on November 18, 1982. The motion for new trial was heard and overruled on August 3, 1983. Notice of appeal was timely filed and the record was docketed in this court on October 18, 1983. The case was argued before this court January 9, 1984.

and that a petroleum accellerant had been used on the back exterior wall of the residence. A search of the premises revealed a one gallon plastic milk jug with a nylon cord tied around the top found in a ditch eight to ten feet away from the residence. The jug had no lid and smelled of gasoline. One of the firemen answering the call, Kenzie Wiley, was present when the jug was found. He told investigators that he had seen the jug before. The appellant had mowed his grass one month earlier and had used a plastic milk jug with a nylon cord tied around the top for gas. Jerry West, a witness on the scene, told investigators that he had seen the appellant earlier that evening at the scene with the milk jug and that it had gasoline in it at the time. West had come to the residence in response to an argument between appellant and Ray Williams. While he was there, West witnessed another argument between the appellant and Porter Marsh, another victim of the fire. The appellant lived with his aunt approximately 70 yards from the Williams residence. When investigators went to appellant's residence they found in a crack between the porch and front door, a plastic cap which fit the jug described previously. We conclude this information was sufficient to warrant a prudent man in believing that appellant had committed the offense. *Vaughn,* supra.

(B) Appellant also contends his in-custody statement should have been suppressed because it was involuntarily given. The appellant gave three different statements to police throughout the day on November 3, 1980. The first statement was given at approximately 8:30 a.m. after appellant was advised of his Miranda rights. This statement was entirely exculpatory. The second statement was given at 3:41 p.m. that afternoon following some investigation by the officer who conducted the morning interrogation. Appellant was advised of his rights again prior to the questioning. When asked whether he wished to talk to officers at that time, appellant responded that he had said all he had to say. The interrogation continued and resulted in the second statement. Nothing in this statement was introduced into evidence at trial nor does the record reflect its content. Following this interrogation, appellant was taken voluntarily to Dothan, Alabama, and given a polygraph test. The record does not show what questions were asked or what answers were given. On the return trip to Georgia, the officer and appellant engaged in conversation unrelated to the fire. The third statement was made by appellant after the return to Georgia, during the booking procedure some four hours after the second interrogation had ceased. During the course of booking, appellant blurted out, "Charles, I did it. I'll take the blame. What am I looking at?" It is this third statement which appellant sought to suppress on the ground it was made after he had invoked his right to remain silent

during the second interrogation.

We agree with appellant that interrogation should have ceased when in response to his Miranda rights he stated that he had said all he had to say. The U. S. Supreme Court in Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), established guidelines under which an in-custody statement can be obtained from a defendant. There the court held that the in-custody interrogation of the defendant must cease if the defendant states or indicates to the officers that he will no longer answer questions or provide information. However, the statement objected to in this case was not a product of the improper interrogation. As we noted earlier, the statement made by appellant during that interrogation was not introduced into evidence. The statement appellant sought to suppress was made by him at the time of his booking, approximately four hours later, and was not in response to any interrogation by the officers. For such a statement to be admissible it must be voluntarily made without being induced by the slightest hope of benefit or the remotest fear of injury or punishment. *Moore v. State,* 222 Ga. 748 (152 SE2d 570) (1966). The evidence is undisputed that no questions were asked of appellant nor were any promises of benefit or threats of punishment made prior to the statement. There was no interrogation. The statement was unsolicited. We are unpersuaded by appellant's argument that a causal connection exists between the improper interrogation and the inculpatory statement made some four hours later such that the statement was the result of the interrogation. We conclude the statement was entirely voluntary and spontaneous on appellant's part. The trial court did not err in denying the motion to suppress.

2. In his second enumeration of error, appellant contends the trial court erred in denying his motion for a mistrial made after a police investigator testified when he initially approached appellant he told him he "wanted to talk to him about a fire that had occurred that morning and that his name had been brought up through some street talk. . . ." Appellant contends the reference to "street talk" improperly placed his character into evidence and was so highly prejudicial as to warrant a mistrial.

For purposes of discussion we will assume, without deciding, that the reference to "street talk" did inject appellant's character into evidence. A review of the trial transcript reveals, after the objection the prosecutor withdrew the question and the jury was instructed to disregard the response. The decision of whether to grant a motion for a mistrial is within the sound discretion of the trial court and his ruling will not be disturbed on appeal absent an abuse of discretion. *Ladson v. State,* 248 Ga. 470 (285 SE2d 508) (1981). We

find no abuse of discretion here. Furthermore, it is not reversible error to refuse to grant a mistrial if the alleged harmful testimony can be corrected by a proper instruction to the jury. *Britten v. State,* 221 Ga. 97 (5) (143 SE2d 176) (1965); *Stansifer v. State,* 166 Ga. App. 785 (2) (305 SE2d 481) (1983). We find no merit in this enumeration of error.

3. In his last enumeration, appellant contends the evidence did not support the verdict and the trial court erred in not granting his motion for a directed verdict of acquittal. A review of the record in this case in the light most favorable to the verdict shows that a rational finder of fact could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 4, 1984 —
REHEARING DENIED APRIL 24, 1984.

*Thomas H. Baxley, Harold H. Hobbs,* for appellant.
*Charles M. Ferguson, District Attorney, Michael J. Bowers, Attorney General,* for appellee.