A92A0654. CHAMBERS v. THE STATE.
(421 SE2d 88)

SOGNIER, Chief Judge.

Michael Paul Chambers was indicted on a charge of murder and convicted of voluntary manslaughter. He appeals, contending the trial court erred by failing to give the jury his requested charge on the lesser included offense of involuntary manslaughter in the commission of an unlawful act. OCGA § 16-5-3 (a).

Evidence presented at trial established that appellant and his companion of six years, Kathy Way, had a fight over appellant's decision to move out of the trailer home they shared. Detective Sergeant

Ted Ray of the Clarke County Police Department testified that he and another officer responded to a radio report of a shooting at the Glen Forest Mobile Home Park, where the officers were met by appellant and led by him to his trailer home. Sgt. Ray stated that he entered the home and found Way face down on the floor of the bedroom with a cocked .22 caliber revolver approximately 6 inches from her feet. Way was removed by emergency personnel to a local hospital where, without recovering consciousness, she died less than 24 hours later from the effects of being shot by a bullet fired from a .22 caliber revolver. Ray testified that he deduced from the condition of the bedroom that a struggle of some type had taken place. He also testified that from the way belongings were boxed, it appeared that someone was moving either into or out of the home. Way's young daughter testified that she had heard the victim and appellant arguing the night before the shooting and on an unspecified earlier occasion had heard appellant threaten to kill Way.

Both appellant's taped and written statements were admitted into evidence. In his taped statement appellant told officers that Way got the gun during the course of the argument over his moving and that he "grabbed the gun from her and it went off. I don't know if I hit the trigger or what I [did]" to cause the gun to fire. He stated he did not know how many shots were fired but was positive that neither he nor Way cocked the gun again. He denied knowing how the revolver found by Sgt. Ray next to Way's feet had been cocked. In his written statement, appellant explained that when Way got the gun, she threatened to kill him, but then gave him the gun after he calmed her down. He stated that he saw that the hammer had been cocked and that he was trying to let the hammer down when the gun fired. He then threw the gun to the floor and, seeing Way fall, ran to a nearby store to telephone for help. Appellant did not testify at trial.

A pathologist testified for the State that the bullet entered the victim on her left side at the junction of the head and neck, about one-and-one-half inches from her left ear lobe, severing Way's spinal cord. Based on the horizontal path of the bullet, the pathologist opined that the gun was held level with the victim's body and that the shot was fired no more than a foot from the victim's head. The pathologist testified that a person shot in this manner would lose consciousness immediately and would be unable to cock a revolver. The witness also detailed the bruises found on the victim's body, which he stated had been sustained within 24 hours of her death.

Other expert testimony established that the fatal bullet was fired from the .22 caliber revolver found at her feet. The expert who examined the revolver testified that there was only a "very remote chance" that dropping it would cause it to cock and that in his opinion it would require some human agency to cock the weapon.

Appellant submitted written requests for charges on accident, self-defense, involuntary manslaughter in the commission of an unlawful act (OCGA § 16-5-3 (a)), and involuntary manslaughter in the commission of a lawful act in an unlawful manner (OCGA § 16-5-3 (b)). The transcript of the charge conference reveals that appellant specifically withdrew his request for a charge on self-defense, claimed that although he took the gun from Way in self-defense its discharge was an accident, thereby disavowing a justification defense, and requested instead that the trial court charge the jury on involuntary manslaughter in the commission of an unlawful act.[1] However, after the trial court repeatedly reaffirmed its decision not to give the requested involuntary manslaughter-unlawful act charge, appellant reasserted his request for the self-defense charge, expressly informing the trial court that he did so as the result of the trial court's ruling denying the requested involuntary manslaughter charge. The trial court then charged the jury on voluntary manslaughter, accident, and self-defense, but not as to the provisions of OCGA § 16-5-3 (a). After carefully reviewing the transcript of the charge conference, we do not agree with the State that the trial court's giving of the self-defense charge precluded appellant from raising on appeal any error in the trial court's refusal to charge involuntary manslaughter. See, e.g., *Willis v. State*, 258 Ga. 477-478 (1) (371 SE2d 376) (1988). Instead, we agree with appellant that because of the particular circumstances presented in the case sub judice, we can address his contention that the trial court's failure to charge the provisions of OCGA § 16-5-3 (a) was error.

Appellant argues that the evidence outlined above required the trial court to charge the jury on the lesser included offense of involuntary manslaughter in the commission of an unlawful act. We do not agree. The essential elements of OCGA § 16-5-3 (a) are "first, intent to commit the unlawful act; and secondly, the killing of a human being without having so intended but as the proximate result of such intended unlawful act." (Punctuation, citations, and emphasis omitted.) *Grimes v. State*, 199 Ga. App. 152, 153 (1) (404 SE2d 324) (1991). Appellant argues there was evidence from which the jury could have concluded that appellant was committing the unlawful act of reckless conduct, OCGA § 16-5-60 (b), when he attempted to lower the hammer on the revolver given to him by Way after she had earlier cocked the weapon, and that Way's death was the proximate result of this intended unlawful act so as to render applicable a charge on involuntary manslaughter in the commission of an unlawful act.[2]

---

[1] We note that appellant withdrew and did not renew at any time his request for a charge on involuntary manslaughter in the commission of a lawful act. OCGA § 16-5-3 (b).

[2] We note that reckless conduct is the only unlawful act indicated by appellant's version

Appellant's argument is inconsistent both with the definition of reckless conduct and with appellant's statements to the police. Reckless conduct exists where a person "causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." OCGA § 16-5-60 (b). The type of behavior that constitutes "reckless conduct" may best be described by noting that reckless conduct is a lesser included offense of aggravated assault, OCGA § 16-5-21 (a), because both crimes proscribe subjecting another to actual injury or the possibility of injury, but differ depending on whether the forbidden act is intentional or the product of criminal negligence. *Bowers v. State*, 177 Ga. App. 36, 37-38 (338 SE2d 457) (1985).

Given the statements appellant made to the police, we cannot agree that the evidence would have authorized a jury to find that appellant was "disregarding a substantial and unjustifiable risk" of harm when he accepted or took the cocked and loaded revolver from Way. On the contrary, appellant's statements indicate that he acted consciously to *avoid* the substantial risk of harm to himself and to Way that the cocked pistol posed, but that the manner in which he handled the revolver he received from Way was "without due caution and circumspection, resulting in culpable negligence," *Nutt v. State*, 159 Ga. App. 46, 47 (282 SE2d 696) (1981), i.e., a lawful act committed in an unlawful manner under OCGA § 16-5-3 (b). There is no evidence in the case sub judice to support the conclusion that appellant's handling of the revolver constituted reckless conduct or was in any manner unlawful. See *Nutt*, supra.

Contrary to the parties' assumptions, *Willis*, supra, does not hold that OCGA § 16-5-3 (b) is inapplicable any time the victim is killed by the shooting of a gun. See *Drake v. State*, 221 Ga. 347, 348 (2) (144 SE2d 519) (1965) (accused shot deceased in hunting incident; evidence held to support charge under subsection (a) or (b) because jury could decide that accused either committed unlawful act of hunting deer out of season or committed lawful act of shooting at fox); *Maloof v. State*, 139 Ga. App. 787 (229 SE2d 560) (1976) (charge on subsection (b) required where evidence showed accused, who was handing cocked gun to victim, decided to let hammer down first while pointing

---

of the events that would support a charge on OCGA § 16-5-3 (a), since appellant disavowed intentionally pointing the gun at Way (thereby disavowing any claim of acting unlawfully pursuant to OCGA § 16-11-102, pointing a gun at another, which requires that the pointing be intentional, see *Parsons v. State*, 16 Ga. App. 212 (84 SE 974) (1915)) and use of a gun would render any unlawful assault on Way a felony under OCGA § 16-5-21 (a) (2).

gun upwards; victim tried to move past accused at which time gun discharged, killing victim). Instead, *Willis* indicates only that one who willfully fires a gun at another acts either unlawfully or in self-defense.

Although appellant has expressly disavowed requesting the trial court to charge the jury on OCGA § 16-5-3 (b), given the mandate of OCGA § 5-5-24 (c), out of an abundance of caution we have nevertheless reviewed the record. See *Foskey v. State*, 116 Ga. App. 334, 336 (157 SE2d 314) (1967). We hold that although such a charge would have been authorized by the evidence, the failure to charge the jury on involuntary manslaughter in the commission of a lawful act was not so blatantly apparent and prejudicial that it raised a question whether appellant was deprived of a fair trial because of it, see generally id., especially because the evidence adduced by the State authorized the jury to find beyond a reasonable doubt that appellant was guilty of voluntary manslaughter (the offense upon which the jury was instructed) under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Massengale v. State*, 189 Ga. App. 877-879 (377 SE2d 882) (1989).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 29, 1992 —
RECONSIDERATION DENIED JULY 14, 1992 —

*Richard L. Dickson, Russell C. Gabriel, James D. Love,* for appellant.

*Harry N. Gordon, District Attorney, James B. McClung, Assistant District Attorney,* for appellee.

