### S98A0421. DUNAGAN v. THE STATE.
(502 SE2d 726)

HUNSTEIN, Justice.

Jonathan Dunagan was indicted on charges of malice murder, felony murder, and possession of a firearm during the commission of a felony arising out of the shooting death of Jason Freund. A jury found Dunagan guilty of felony murder and the possession charge. He appeals from the denial of his motion for new trial, contending error in the trial court's instructions to the jury.[1] We agree and reverse.

1. The evidence adduced at trial authorized the jury to find that Dunagan was a member of a group of teenage boys who spent time together and frequently played with handguns. It was not uncommon for the teenagers during their horseplay to point guns at one another. On the day of the homicide, Dunagan left his five-shot .38 caliber

---

[1] The homicide occurred on February 4, 1997. Dunagan was indicted March 26, 1997 in Columbia County. He was found guilty on July 8, 1997, and was sentenced in an order filed August 6, 1997. His motion for new trial, filed August 15, 1997, was denied November 14, 1997. A notice of appeal was filed November 20, 1997 and the appeal was docketed on December 4, 1997. Oral arguments were heard on March 9, 1998.

Rossi revolver unattended on a kitchen counter for 45 minutes. Dunagan had loaded three rounds of live ammunition in the weapon, including a round in the chamber directly in front of the hammer. Unaware that the cylinder in this type of gun rotates to the left before firing and observing the live round in front of the hammer, another member of the group rotated the gun's cylinder to the adjacent empty chamber to make the weapon safer. The victim, Jason Freund, knew the gun contained live ammunition and that the chamber had been rotated. When Dunagan returned, he did not inspect the gun before he began playing with it. Dunagan intentionally pointed the weapon directly at Freund's head and pulled the trigger. Dunagan's behavior was so surprising that the only other teenager in the room turned to see if the victim showed any shock in response. Although the gun dry fired the first time Dunagan pulled the trigger, the second time Dunagan fired a live round of ammunition. Freund was struck in the head and died immediately. Dunagan tried to persuade some of the other teenagers to help him conceal the body but they refused and instead informed adults who then contacted the authorities.

We find this evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Dunagan was guilty of felony murder based on the underlying felony of aggravated assault and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Dunagan contends the trial court erred when in response to inquiries by the jury whether felony murder could be committed without intent, the court gave several charges instructing the jury that criminal negligence could substitute for criminal intent. Dunagan argues that these charges improperly authorized the jury to convict him of felony murder based on an assault, here aggravated into felony status by the use of a deadly weapon, OCGA § 16-5-21 (a) (2), based solely on Dunagan's criminal negligence, rather than his criminal intent.

There are two ways to commit an assault: when a person "[a]ttempts to commit a violent injury to the person of another," OCGA § 16-5-20 (a) (1) and when a person "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." Id. at (a) (2). A review of the language of the indictment in this case reveals that it was sufficient to charge Dunagan with an assault based on either (a) (1) or (a) (2) in regard to the aggravated assault underlying the felony murder charge, see *Jordan v. State*, 214 Ga. App. 598, 601 (2) (448 SE2d 917) (1994), and the trial court correctly instructed the jury on both types of assault.

(a) Because an aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negli-

gence, we agree with Dunagan that the trial court's instructions to the jury were error. "In the case of aggravated assault with a deadly weapon, the attempted or the completed injury to the victim is the intended consequence of the defendant's act." *Bowers v. State*, 177 Ga. App. 36, 38 (1) (338 SE2d 457) (1985). Threatened or actual injury to a victim by means of a deadly weapon that results from a defendant's criminal negligence constitutes the offense of reckless conduct. Id. Accord *Chambers v. State*, 205 Ga. App. 16, 19 (421 SE2d 88) (1992), wherein it was recognized that both aggravated assault with a deadly weapon and reckless conduct "proscribe subjecting another to actual injury or the possibility of injury, but differ depending on whether the forbidden act is intentional or the product of criminal negligence. [Cit.]" See also *Sheats v. State*, 210 Ga. App. 622 (436 SE2d 796) (1993) ("[t]he jury's finding that Sheats committed aggravated assault under OCGA § 16-5-21 required a finding of an intentional infliction of injury, which precluded the element of criminal negligence in reckless conduct under OCGA § 16-5-60").

Although the trial court relied on OCGA § 16-2-1 (defining the elements of a crime) in charging the jury that criminal negligence can substitute for criminal intent, criminal intent and criminal negligence are not interchangeable in those instances where the mental culpability of the actor is the essential element that distinguishes two separate crimes, with separate penalties, for committing the same behavior. Such an instance exists with aggravated assault based on OCGA § 16-5-20 (a) (1) and reckless conduct: where the proscribed conduct is the result of the actor's criminal intent, the Legislature has determined that the offense constitutes the felony of aggravated assault whereas that same conduct which is the result of the actor's criminal negligence supports a conviction only of reckless conduct.[2] OCGA § 16-5-60. See *Lindsey v. State*, 262 Ga. 665, 666 (2) (b) (424 SE2d 616) (1993) ("Reckless conduct is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another"); see also *Brewton v. State*, 216 Ga. App. 346 (454 SE2d 558) (1995), overruled on other grounds, 266 Ga. 160 (465 SE2d 668) (1996) (crime of reckless conduct is an instance of criminal negligence, rather than a culpable act of either general or specific criminal intent).

A different result is not supported by murder cases such as *Car-*

---

[2] As clarified in the Committee Notes to Ga. Code Ann. § 26-2910, the predecessor to OCGA § 16-5-60, the reckless conduct statute is "designed to make criminal those activities which are extremely dangerous to the personal safety of others, whether or not actual harm results. . . . Misdemeanor punishment will ordinarily suffice for conduct of this sort, regardless of the type of instrumentality used. I[f] the actor's conduct contains additional ingredients that suggest more severe sanctions, he will almost certainly have violated some other statute carrying heavier punishment, such as aggravated assault, attempt, etc."

*rigan v. State*, 206 Ga. 707 (2) (58 SE2d 407) (1950) and *Myrick v. State*, 199 Ga. 244 (34 SE2d 36) (1945) or cases involving aggravated assault with intent to murder such as *Gallery v. State*, 92 Ga. 463 (17 SE 863) (1893) and *Mundy v. State*, 59 Ga. App. 509 (1 SE2d 605) (1939). A review of those cases and the authority on which they rely reveals they are based on a form of homicide abolished by the Legislature in 1968[3] and thus those holdings are inapplicable now. *State v. Foster*, 141 Ga. App. 258 (233 SE2d 215) (1977), aff'd 239 Ga. 302 (236 SE2d 644) (1977). Accordingly, we find it necessary to overrule those cases which, relying on inapposite law, have held that an aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) can be committed by criminal negligence. *Osborne v. State*, 228 Ga. App. 758 (492 SE2d 732) (1997); *Jordan*, supra, 214 Ga. App. at 601-602 (2).[4]

Therefore, under the facts in this case, we hold that the trial court's charges that criminal negligence could substitute for criminal intent were error.

(b) The trial court's charges that criminal negligence can substitute for criminal intent were also error under the alternate ground underlying the felony murder conviction, aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (2). "[I]f the pointing of [a] firearm place[s] the victim in reasonable apprehension of immediate violent injury, the felony of aggravated assault has occurred." *Rhodes v. State*, 257 Ga. 368, 370 (5) (359 SE2d 670) (1987). See also *Gilbert v. State*, 209 Ga. App. 483, 484 (1) (433 SE2d 664) (1993).

---

[3] Prior to 1968, there were two different offenses of murder: the predecessor to our malice murder statute, OCGA § 16-5-1 (a) and (b), and a form of homicide committed without the intent to kill, set forth within and expressly exempted from the involuntary manslaughter statute, which provided that where an involuntary killing "shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being . . ., the offense shall be deemed and adjudged to be murder." Ga. L. 1833, p. 143, Penal Code § 9, pp. 148-149; see also former 1933 Code § 26-1009. This language was eliminated in 1968 with the enactment of the Criminal Code of Georgia. Ga. L. 1968, p. 1249, § 1. This Court has continued to rely upon pre-1968 cases because the 1968 amendment did not change the law regarding intentional murder, hence the continued validity of earlier precedents in regard to that law (although references in the cases to the fact that a defendant was charged "with malice aforethought" is not determinative of the statutory basis since under pre-1968 case law "murder is the same under both Code sections whether it is done with or without the intention to kill, and there can be no murder without malice." *Wallace v. State*, 216 Ga. 180, 181 (1) (115 SE2d 338) (1960).) Great caution and care must be employed when pre-1968 homicide cases are used as legal authority; hence, we must question the use of such authority in cases such as *Tiller v. State*, 267 Ga. 888 (1) (485 SE2d 720) (1997); *Bishop v. State*, 257 Ga. 136 (1) (356 SE2d 503) (1987); *Jordan v. State*, supra, 214 Ga. App. at 602 (2) (aggravated assault with a deadly weapon); and *Scroggins v. State*, 198 Ga. App. 29 (1) (b) (401 SE2d 13) (1990) (aggravated assault with intent to murder).

[4] It is not necessary to overrule *Fambro v. State*, 164 Ga. App. 359 (1) (297 SE2d 111) (1982), inasmuch as the facts therein reveal the case involved an assault based on OCGA § 16-5-20 (a) (2) and, under the rationale set forth in Division 2 (b), infra, the language in *Fambro* regarding criminal negligence is, at best, mere dicta.

These cases recognize that pursuant to the express language of (a) (2), an assault under that subsection looks to the victim's state of mind, rather than the accused's, to establish the elements of an assault. There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim. See *Osborne v. State*, supra, 228 Ga. App. at 759.[5] Thus, because it is the state of mind of the victim that determines whether an assault predicated solely on OCGA § 16-5-20 (a) (2) has been committed, where a case involves aggravated assault based on (a) (2), there is no reason for a charge on criminal negligence at all.

3. Accordingly, insofar as the felony underlying Dunagan's felony murder conviction was an aggravated assault based on OCGA § 16-5-20 (a) (2), we find the giving of the challenged instructions constituted harmless error. At worst, the instructions could only have benefitted Dunagan, in that the jury could have believed it had to look beyond the question of whether the victim was placed in reasonable apprehension of immediately receiving a violent injury and also determine whether Dunagan possessed a culpable mental state it was not required to find in order to decide whether he committed felony murder.

However, we find that the erroneous charges do require reversal of the felony murder conviction inasmuch as that conviction could have been founded on the underlying felony of aggravated assault based on OCGA § 16-5-20 (a) (1). To convict Dunagan under (a) (1), the jury had to find that Dunagan "[a]ttempt[ed] to commit a violent injury to the person of another." Id. Although there was evidence to support the felony murder verdict based on either (a) (1) or (a) (2), see Division 1, supra, there was evidence adduced from which the jury might have concluded that the victim's death was the result of Dunagan's criminal negligence.[6] The jury's verdict did not specify which form of aggravated assault served as the underlying felony for the felony murder conviction. Thus, we cannot conclusively state that the verdict rested exclusively on the (a) (2) ground or that, if it rested on the (a) (1) ground, that the jury did not incorrectly substitute criminal negligence for criminal intent in rendering its verdict on the (a) (1) ground. Accordingly, because the erroneous jury charges could

---

[5] While the victim may be frightened or scared as a result of the defendant's conduct, that result need not be intended by the defendant in order to constitute an assault under OCGA § 16-5-20 (a) (2).

[6] There was no requested instruction or any error enumerated regarding the absence of an instruction giving the jury the option of finding Dunagan guilty of involuntary manslaughter based on the underlying misdemeanor of reckless conduct.

have misled the jury into believing that the evidence of Dunagan's criminal negligence could substitute for the required criminal intent to commit the (a) (1) assault and the verdict returned by the jury leaves us uncertain that the verdict rested exclusively on the sufficient ground, see *Zant v. Stephens*, 462 U. S. 862, 881 (II) (103 SC 2733, 77 LE2d 235) (1983), we cannot eliminate the reasonable probability that the jury might have returned a different verdict had the trial court not given the erroneous charges. Therefore, Dunagan's conviction must be reversed.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

The majority concludes that it was harmless error to instruct the jury that the crime of aggravated assault as defined in OCGA § 16-5-20 (a) (2) can be committed by an act of criminal negligence, but that it was reversible error to charge that an aggravated assault under OCGA § 16-5-20 (a) (1) can be committed by such an act. In my opinion, there was no error at all because the charge was a correct statement of the law as to the commission of an aggravated assault under either subsection (a) (1) or (a) (2) of OCGA § 16-5-20, and was adjusted to the facts of this case. Accordingly, I dissent to the reversal of Dunagan's conviction for felony murder.

Intention and criminal negligence are not identical definitional elements of a crime. They are distinctly different elements, one of which must operate with the proscribed act or omission " "for a violation of a statute to constitute a crime in Georgia. . . ." *Daniels v. State*, 264 Ga. 460, 464 (2) (b) (448 SE2d 185) (1994). As an alternative element, " '[c]riminal negligence may sometime[s] be a sufficient substitute for deliberate intention in the commission of [a] crime.' [Cit.]" *J.A.T. v. State of Ga.*, 133 Ga. App. 922, 923 (1) (212 SE2d 879) (1975).

Dunagan was charged with committing aggravated assault by "shooting" Jason Freund. Although Dunagan claimed that he did not intend that the pistol actually fire, the undisputed evidence shows that he intentionally pointed a loaded revolver directly at Freund and then deliberately pulled the trigger. Compare *Bowers v. State*, 177 Ga. App. 36, 39 (2) (338 SE2d 457) (1985) (target practice). Thus, even though Dunagan may not have intended that the pistol actually discharge, he nevertheless fired a shot under circumstances which evidence an utter disregard for the safety of Freund who might reasonably be expected to be injured or frightened. See *Stiles v. State*, 264 Ga. 446, 448 (2) (448 SE2d 172) (1994). The Court of Appeals has recognized that, under such circumstances, the defendant can be found guilty of commission of a criminally negligent aggravated

assault. *Fambro v. State*, 164 Ga. App. 359 (1) (297 SE2d 111) (1982). See also *Osborne v. State*, 228 Ga. App. 758 (492 SE2d 732) (1997); *Jordan v. State*, 214 Ga. App. 598, 601 (2) (448 SE2d 917) (1994). These Court of Appeals opinions are consistent with those of other jurisdictions which have held that an aggravated assault can be committed through criminal negligence. See 6 AmJur2d, Assault and Battery, § 14. Moreover, the principle that an aggravated assault can be committed through an act of "criminal negligence" is consistent with the long-held view that a homicide resulting from circumstances amounting to the commission of a criminally negligent aggravated assault constitutes the crime of murder. *Carrigan v. State*, 206 Ga. 707, 718 (2) (58 SE2d 407) (1950). See also *Tiller v. State*, 267 Ga. 888, 889 (1) (485 SE2d 720) (1997); *Bishop v. State*, 257 Ga. 136, 138 (1) (356 SE2d 503) (1987). The majority concludes that *Carrigan* is inapplicable simply because it was decided before the 1968 enactment of our present criminal code. However, it is readily apparent that the pre-1968 statute applied in *Carrigan* is very closely analogous to our present felony murder statute, which is codified at OCGA § 16-5-1 (c). Therefore, in a post-1968 felony murder case such as this one, it is certainly reasonable to consider cases construing the pre-1968 statutory equivalent of OCGA § 16-5-1 (c).

Nothing in OCGA § 16-5-21 precludes commission of an "aggravated assault" through criminal negligence. Therefore, although an "aggravated assault" can be committed through an intentional act of "shooting," I do not believe that a "shooting" must be intentional to constitute an "aggravated assault." In my opinion, if criminal negligence can substitute for intent in the crime of malice murder, then, as *Fambro v. State*, supra, and other Court of Appeals cases hold, it can substitute for the intent to injure or frighten in the crime of aggravated assault with a deadly weapon. Thus, where, as here, the defendant is charged with "shooting" the victim and the evidence shows that the homicide occurred when the defendant intentionally aimed a pistol and deliberately pulled the trigger, the offense is felony murder while in the commission of an aggravated assault. A verdict of guilty of such offense would be authorized even if the defendant did not intend to injure or frighten the victim and even if the actual discharge of the gun was unintended. *Stiles v. State*, supra at 447 (1, 2). See also *Ross v. State*, 268 Ga. 122, 123 (3) (485 SE2d 780) (1997). Compare *Bowers v. State*, supra. There was no error in the trial court's charge, and, therefore, I dissent to the reversal of the judgment of conviction and sentence imposed upon Dunagan for the felony murder of Freund.

DECIDED JULY 16, 1998.

*Garrett & Gilliard, Michael C. Garrett,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Kelly P. Brashear, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Elizabeth L. Jaeger, Assistant Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

*James C. Bonner, Jr.,* amicus curiae.