20784. WILSON *v.* THE STATE.

SUBMITTED FEBRUARY 8, 1960—DECIDED MARCH 16, 1960.

*R. L. LeSueur, Jr., R. L. LeSueur,* for plaintiff in error.
*Charles Burgamy, Solicitor-General,* contra.

ALMAND, Justice. Edward Wilson, under an indictment charging him with a felony, was found guilty and sentenced. His motions for a judgment of not guilty notwithstanding a verdict of guilty and for a new trial were denied. His bill of exceptions, assigning error on these judgments, has been certified and transmitted to this court by the Court of Appeals by reason of the equal division of the judges of that court as to the judgment that should be rendered. Gardner, P. J., Carlisle and Quillian, JJ., being for affirmance, and Felton, C. J., Townsend and Nichols, JJ., for reversal.

Error is assigned on the order denying the defendant's motion for a judgment of not guilty notwithstanding the verdict of guilty. We do not agree with the ruling in *Crowe* v. *State,* 98 *Ga. App.* 185 (3) (105 S. E. 2d 353), that the rule providing for entering a judgment notwithstanding the verdict is applicable in the trial of criminal cases. This rule, adopted by this court, and approved by the General Assembly in 1953 (Ga. L. 1953, Nov.-Dec. Sess., pp. 440, 444; Code, Ann., § 110-113), relates solely to pleading, procedure, and practice in the trial of civil actions. See *Winford* v. *State,* 213 *Ga.* 396 (5) (99 S. E. 2d 120) ; *Albert* v. *State,* 215 *Ga.* 564 (3) (111 S. E. 2d 215). The act of 1945 (Ga. L. 1945, p. 145; Code, Ann., § 81-1501), vesting in the Supreme Court the power to prescribe rules of procedure and practice when ratified by the General Assembly, did not authorize the court to prescribe rules of procedure, pleading, and practice in the trial of criminal cases.

There being no provision of law for the court to entertain a

motion for a judgment of not guilty notwithstanding a verdict of guilty, this assignment is without merit.

■ The defendant was indicted under Code § 5-9914 as amended (Ga. L. 1941, p. 337). It was charged that the defendant did buy from the Sumter Livestock Association, Inc., a commission merchant, on a cash sale 109 hogs and 47 cows on February 6, 1958, and that he failed and refused to pay for them; and that he made away and disposed of the hogs and cows, causing the corporation to sustain a loss of $9,467.66.

The Judges of the Court of Appeals were equally divided on the question of whether the evidence showing the sale of the hogs and cows on February 6, 1958, to the defendant was for cash or on credit.

In construing Code § 5-9914 as amended, as to the words "on cash sale" or "for cash," in *Troup* v. *State*, 209 *Ga.* 9, 10, 11 (70 S. E. 2d 470), this court said: "Where a sale for cash is consummated, and by some subterfuge the purchaser evades payment, the element of fraud enters. It is therefore evident that the statute was enacted to cover cash sales where payment was not, in fact, made, and contemplates a sale as being for cash though a period of time may elapse between delivery and payment. Therefore, whether a sale is for cash or on credit becomes a matter of fact for the jury in each particular case. . . Whether a sale is for cash or credit is determined by the intention of the parties to be ascertained from the agreement, understanding, or circumstances connected with the transaction."

The manager of the livestock association testified as follows: "On or about February 6, 1958, we had occasion to sell Mr. Edward Wilson some livestock; we sold Mr. Wilson on that date 109 hogs and 47 head of cattle; these animals were broken down into different categories and charged under different headings, as Mr. Wilson was accustomed to buying and he bought this total of a little over 150 head of livestock that day; that was a cash sale; those hogs and cattle came to $9,467.66; Mr. Wilson gave me a check a few weeks later; he was supposed to have paid for these livestock the next morning when he got the bill; it was an agreement between me and Mr. Wilson that he would send the check for this livestock the next morning when he got the in-

voices, and could check the invoices against the livestock to be sure he got the right number of head and the right kind of livestock; and that was the agreement between the two of us that he would do it and he had been doing it; our agreement was he would do that; there were some times when something happened, I don't know what in between, and he would not do it; and this is the way that happened sometimes; these livestock were sold to Mr. Wilson on a cash basis; it was strictly a cash transaction but in order for him to let those trucks come in, sometimes he would have several truck loads and, of course, it was impossible for him to get on one truck load and carry them to Atlanta or some place and have others too, and we allowed him to get the bills the next morning and check these livestock and then mail us a check; on some occasions Mr. Wilson would not do it; of course, it would take two or three days or a day or two for a check to get down here from where Mr. Wilson lived; he was a busy man and not in his office all the time and sometimes he would fail to send us a check immediately and we would call Mr. Wilson's attention to the circumstances we had not received his check that was supposed to have been mailed to us and he would always very quickly mail it to us then; on February 6, 1958, when he bought these cows and hogs he bought them from the Sumter Livestock Association, Incorporated, when it sold that livestock to him was acting strictly as a commission agent for these farmers."

Though there was evidence that, on previous occasions over a period of three or four years, the defendant had bought cows and hogs from the association and had not paid for them until several weeks after the purchase, and while the defendant's statement supports his contention that the sale of February 6, 1958, was a sale on credit, it was for the jury to resolve the conflicts. The evidence supports the verdict of the jury.

■ Counsel for the defendant has expressly abandoned special grounds 3, 4, and 5 of the amended motion for a new trial. We have carefully examined and reviewed the other grounds of the amended motion. These are not of such merit or substance as to require any elaboration. It was not error to overrule all of the special grounds.

The verdict being supported by the evidence, it was not error to overrule the general grounds of the motion for new trial.

*Judgment affirmed. All the Justices concur, except Quillian, J., who is disqualified.*