44071. MALLETTE v. THE STATE.

SUBMITTED NOVEMBER 8, 1968—DECIDED JANUARY 14, 1969.

*Rowland & Rowland, E. Hodges Rowland,* for appellant.

*H. R. Thompson, Solicitor General,* for appellee.

QUILLIAN, Judge. The defendant, appellant here, contends that for two reasons the trial judge erred in denying his motion for new trial. One, the evidence did not authorize a finding that the sale in question was not a "cash sale"; two, the evidence was insufficient to show that the defendant in the purchase and disposition of the livestock did so with the intent to defraud the Emanuel County Livestock Market, Inc., hereinafter referred to as the Livestock Market.

In considering the first issue the Supreme Court in *Troup v. State,* 209 Ga. 9, 10 (70 SE2d 470) enunciated the following controlling rule: "Where a sale for cash is consummated, and by some subterfuge the purchaser evades payment, the element of fraud enters. It is therefore evident that the statute was enacted to cover cash sales where payment was not, in fact, made, and contemplates a sale as being for cash though a period of time may elapse between delivery and payment. Therefore, whether a sale is for cash or on credit becomes a matter of fact for the jury in each particular case. . . Whether a sale is for cash or credit is determined by the intention of the parties to be ascertained from the agreement, understanding, or circumstances connected with the transaction." *Wilson v. State,* 215 Ga. 775, 776 (2) (113 SE2d 607).

The record reveals that M. C. Mallette on February 3, 1967, bought certain livestock from the Livestock Market for the price of $1,130.04. The livestock was delivered to the defendant's packing plant in Dublin, Georgia.

The defendant attempted to show through the testimony of Henry Mallette, his bookkeeper, that such transaction was for credit rather than a cash sale. Henry Mallette testified that he sent three checks as payment to the Livestock Market for the purchase of the livestock in question. The total of these three checks was not the same amount as the amount of sale on February 3, 1967.

J. C. Moore, who operated the Livestock Market as a commission merchant, testified for the State that the defendant would customarily attend sales from week to week and buy livestock with the understanding that he was supposed to bring a check at a later time. He testified that the three checks sent to him were applied to another indebtedness. He further stated that, while the defendant had an account with the Livestock Market, at no time was he requested to apply the three checks to the payment of the purchase made on February 3, 1967. He positively testified that the February 3 sale was a cash transaction.

Under these circumstances the case of *Wilson v. State*, 215 Ga. 775, supra, is controlling. There the court pointed out at p. 777: "Though there was evidence that, on previous occasions over a period of three or four years, the defendant had bought cows and hogs from the association and had not paid for them until several weeks after the purchase, and while the defendant's statement supports his contention that the sale of February 6, 1958, was a sale on credit, it was for the jury to resolve the conflicts. The evidence supports the verdict of the jury."

There is some question as to the necessity of proving an intent to defraud under *Code Ann.* § 5-9914. See *Coffee v. State*, 219 Ga. 328 (133 SE2d 590) and dissenting opinion, and *Howard v. State*, 222 Ga. 525 (150 SE2d 834), where the court held there was no necessity to make such allegation. Apparently, however, such intent would be a necessary constitutional requisite and therefore we consider whether the evidence was sufficient to show such intent.

The appellant argues that under the ruling in *Coffee v. State*, 219 Ga. 328, supra, the evidence demanded a verdict in his favor. We cannot agree with this contention. As held in *Garmon v. State*, 219 Ga. 575 (2) (134 SE2d 796): "The Act of 1959 (*Code Ann.* § 5-9914) creates two separate and distinct penal offenses, namely, (1) failure or refusal of a purchaser to pay for any of the agricultural products mentioned or referred to in the Act when purchased at a cash sale, and (2) for the purchaser to make way with or dispose of any of such agricultural products before paying for same when credit therefor has not been expressly extended. *Plapinger v. State* 217 Ga. 11 (120 SE2d 609)." In the *Coffee* case, 219 Ga. 328, supra, it was pointed out that the manager of the association knew at the time of the sale that the defendant was acting as an agent for another party; that the hogs were delivered to that other party and that there was no evidence that the defendant had anything to do with their delivery or disposition. Here, however, the defendant was himself the party purchasing the livestock in question and he, under some of the evidence, failed to make any payment for the same.

"Every crime consists in the union or joint operation of act and intention. Sometimes the intention can be proved, sometimes it can only be inferred or presumed; and the general rule laid down by our Code is, that the intention will be manifested by the circumstances connected with perpetration of the offense." *Patterson v. State*, 1 Ga. App. 782, 784 (58 SE 284); *Code* §§ 26-201, 26-202. As pointed out in *Towler v. State*, 24 Ga. App. 167 (4) (100 SE 42), the intent with which an act is done is peculiarly a question of fact for determination by the jury and although a finding that the accused had the intent to commit the crime charged may be supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground. *General Oil Co., Inc. v. Crowe*, 54 Ga. App. 139, 151 (187 SE 221); *Russell v. State*, 68 Ga. 785, 789. The evidence in this case was sufficient to sustain the verdict.

*Judgment affirmed. Bell, P. J., and Hall, J., concur.*