## S99A0503. THOMPSON v. THE STATE.

(519 SE2d 434)

HUNSTEIN, Justice.

Christopher L. Thompson was found guilty of felony murder, burglary, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. He appeals from the

denial of his motion for a new trial.[1] For the reasons which follow, we reverse.

1. Under OCGA § 16-7-1 (a), a person commits burglary "[w]hen, without authority and with the intent to commit a felony or theft therein, he enters or remains within." Thompson concedes that the trial court's initial charge correctly instructed the jury on burglary.[2] However, in answering a question from the jury regarding the "without authority" element of the burglary charge, the trial court instructed the jury that if it found that a person "has entered or has remained on the premises of another with the intent to commit a theft, that person's entry or remaining would not be legally authorized." We agree with Thompson that this charge constituted reversible error.

We categorically reject the position that the element of an unlawful entry may be established solely by proof that an accused had the intent to commit a theft or other felony within another's premises. This is contrary to the plain language of the statute and would lead to the anomalous result that a person could be convicted of burglarizing a grocery store merely by entering the store with the intent to steal a food item therein. By instructing the jury it could find unauthorized entry based on the accused's criminal intent, the challenged charge improperly eliminated the State's obligation to prove the essential element of unauthorized entry beyond a reasonable doubt. OCGA § 16-7-1 (a); see generally *Freelove v. State*, 229 Ga. App. 310 (494 SE2d 72) (1997).

---

[1] The crimes occurred on December 5, 1997. Thompson was originally indicted in Floyd County with two co-defendants, Paul Ray and LaShay Adams, and testified against the co-defendants pursuant to a guilty plea agreement with the State. Upon withdrawing his guilty plea, Thompson was reindicted July 10, 1998. A jury found him guilty on September 16, 1998 and two days later he was sentenced to life imprisonment for the murder, a concurrent twenty-year term for the burglary, and two five-year consecutive terms on the possession charges. His motion for new trial, filed October 15, 1998, was denied November 17, 1998. A notice of appeal was filed December 17, 1998. The appeal was docketed December 31, 1998 and was orally argued March 15, 1998.

[2] The Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2d ed. (1991) sets forth the following charge on burglary: "A person commits the offense of burglary when, without authority, that person enters (or remains in) any building or dwelling house of another . . . with the intent to commit a theft." Burglary can result when, with the requisite criminal intent, a person either enters another's premises without authority (such as by breaking through the door or entering a window) or the person enters the premises with authority then remains on the premises after that authority has been revoked (such as entering a store open to the public for business, but remaining hidden inside when business hours are over). OCGA § 16-7-1 (a). The "remains in" language in the suggested pattern jury instruction is placed in parentheses to reflect the two factual alternates under the burglary statute, thereby leaving to the trial court to select the more appropriate factual basis for the charge. Although in this case there was no evidence adduced that Thompson or any of his co-defendants remained in Wyatt's house without authority, the trial court nevertheless charged the jury with both factual alternates. We caution trial courts against continuing this practice.

Contrary to the State's argument, nothing in *Bradshaw v. State*, 172 Ga. App. 330 (2) (323 SE2d 253) (1984); *Jackson v. State*, 151 Ga. App. 596 (2) (260 SE2d 565) (1979); or *Parrish v. State*, 141 Ga. App. 631 (1) (234 SE2d 174) (1977) supports the giving of this charge. These cases stand for the principle that evidence of an accused's unlawful entry into a building where valuable goods are stored may give rise to an inference of an intent to commit a theft therein, particularly where no other motive is apparent for the entry. This inference is based on the recognition that intent is usually not easily susceptible of direct proof, *Thomas v. State*, 166 Ga. App. 650, 651 (1) (305 SE2d 182) (1983), but may "be manifested by the circumstances connected with the perpetration of the offense." *Mallette v. State*, 119 Ga. App. 24, 27 (165 SE2d 870) (1969). Accord OCGA § 16-2-6 (trier of fact may find criminal intent "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted"). The charge in issue in this case, however, did not instruct the jury that it may infer criminal intent from conduct. Instead, the charge informed the jury that if an accused intends to commit a theft when he enters or remains on premises, the jury may infer from the accused's intent that the entry or remaining on the premises was unauthorized. In other words, the charge improperly informed the jury that it could infer conduct from criminal intent.

The record reveals that the trial court did not subsequently correct the error or recharge the jury properly on this issue. Our review of the evidence adduced by the State on the burglary charge does not support the State's contention that Thompson was not harmed by the error. See Division 2, infra. Accordingly, we hold that the trial court committed reversible error by giving the incorrect charge on the elements of burglary.

2. We turn now to the sufficiency of the evidence to support the convictions. At trial the State adduced evidence from which the jury was authorized to find that Thompson, Adams and Ray drove to the home of Ricky Wyatt, a drug dealer whom Adams knew. The plan was that Adams would visit Wyatt, use some ruse to persuade him to leave his home, and then Adams would page Thompson so that he and Ray could enter Wyatt's home and help Adams steal Wyatt's money and drugs. Ray, armed with a Colt Python .357 revolver, and Thompson, armed with Ray's .25 caliber semiautomatic pistol, watched the home while Adams entered and remained in Wyatt's home at his invitation. During their wait, Thompson heard a siren and, believing the police might be checking on the truck the trio had arrived in, returned to the vehicle. However, finding no police and no traffic ticket on the truck, Thompson walked back to Wyatt's home in time to see the side door open and hear three shots being fired, with

first Ray and then Adams fleeing from the direction of the house. Nothing was taken from the victim or his home. Although Thompson told police that he "knew" Ray had entered the home, in statements he made to the police and as a witness for the State during the trial of Adams and Ray, Thompson consistently claimed that he did not personally see the actual shooting and that Ray had fled the scene before Thompson approached the house. The victim was found with his feet inside the side door and his body outside the house at the top of stairs leading to the door. He died from wounds inflicted by the .357 revolver subsequently recovered from Ray's truck. The State also introduced a certified copy of Thompson's first offender conviction for a Gordon County burglary.

We find the evidence adduced sufficient to enable a rational trier of fact to find Thompson guilty of felony murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). However, we must conclude that the State failed to adduce sufficient evidence from which a jury could have convicted Thompson of burglary either directly or as a party to the crime. The evidence established that Thompson's co-defendant Adams entered and remained in Wyatt's house with Wyatt's permission. See footnote 2, supra. Contrary to the State's contention, our review of the evidence fails to reflect any documentary or testimonial evidence from which the jury could have reasonably found that Thompson's co-defendant Ray made an unauthorized entry into Wyatt's house even for the brief time leading up to the victim's shooting. No reasonable trier of fact could have interpreted Thompson's statement that he "knew" Ray had entered the home to mean that Thompson had personally observed Ray's entrance therein so as to establish this necessary element of burglary. Therefore, we reverse the conviction and sentence entered on the burglary count. Accord *Caldwell v. State*, 183 Ga. App. 110 (1) (357 SE2d 845) (1987).

The record reveals that Thompson was charged in a single count with felony murder based on three underlying felonies: aggravated assault with a deadly weapon, aggravated assault with the intent to rob, and burglary. The jury returned a general verdict on the felony murder count without delineating which of the underlying felonies served as the predicate for the felony murder conviction. Accordingly, because the general verdict of guilty did not indicate which of the alternate theories the felony murder conviction was based upon, we must likewise set aside Thompson's conviction for felony murder. *Stromberg v. California*, 283 U. S. 359 (51 SC 532, 75 LE 1117) (1931); *Dunagan v. State*, 269 Ga. 590 (3) (502 SE2d 726) (1998), overruled on other grounds, *Parker v. State*, 270 Ga. 256 (4) (507

SE2d 744) (1998); *Crawford v. State*, 254 Ga. 435 (1) (330 SE2d 567) (1985). Compare *Lumpkins v. State*, 264 Ga. 255 (443 SE2d 619) (1994). While Thompson's conviction for possession of a firearm during the commission of a crime must also be reversed, we affirm Thompson's conviction for possession of a firearm by a convicted felon as it is highly probable that the error in the charge discussed in Division 1 did not contribute to the verdict on this charge. *Francis v. State*, 266 Ga. 69 (3) (463 SE2d 859) (1995).

3. We find no error in the trial court's admission of the sworn testimony Thompson gave during the trial of his co-defendants. The trial court found that Thompson testified at the earlier trial after knowingly and voluntarily waiving his Fifth Amendment right against self-incrimination. It is well-established that

> [w]hat a witness voluntarily testified [to] at a former trial of another party for the homicide is not privileged on a trial of the witness himself for the same homicide. It may be given in evidence against him as an admission.

*Burnett v. State*, 87 Ga. 622, hn. 4 (13 SE 552) (1891). See *Dawson v. State*, 153 Ga. App. 130 (265 SE2d 74) (1980); *McDowell v. State*, 78 Ga. App. 487, hn. 1 (51 SE2d 546) (1949); *Sheppard v. State*, 68 Ga. App. 127 (22 SE2d 347) (1942). See also 23 CJS, Criminal Law, § 884.

*Corthran v. State*, 268 Ga. 443 (491 SE2d 66) (1997), relied upon by Thompson, is distinguishable in that it involved a videotaped statement given police by the accused pursuant to a negotiated plea agreement, rather than trial testimony given by a party who constitutionally waived his right against self-incrimination.

4. Based on the facts adduced at trial, we find no error in the trial court's refusal to give Thompson's requested charge on abandonment. OCGA § 16-4-5.

5. Thompson's remaining enumeration, regarding the trial court's alleged incomplete charge on parties to a crime, is unlikely to recur upon retrial.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

I concur in Division 1, wherein the majority concludes that the trial court erred in its recharge on unauthorized entry as an essential element of the crime of burglary. Because the jury returned a general verdict on the felony murder count, the erroneous recharge requires reversal of Thompson's convictions for that offense, as well as reversal of his convictions for the separate offenses of burglary and possession of a firearm during the commission of a crime. *Dunagan v. State*,

110

269 Ga. 590, 594 (3) (502 SE2d 726) (1998). In Division 2, however, the majority further holds that the evidence was not sufficient to authorize Thompson's conviction for burglary. As a consequence, the State cannot retry him either for burglary or for felony murder with burglary as the predicate offense. *Priest v. State*, 265 Ga. 399 (1) (456 SE2d 503) (1995). I do not agree with this holding, because the evidence of Thompson's guilt for the burglary offense satisfies the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). I also concur in Divisions 3, 4 and 5, of the Court's opinion. Thus, I concur in the affirmance of Thompson's conviction for possession of a firearm by a convicted felon, and in the reversal of his convictions for felony murder, burglary and possession of a firearm during the commission of a crime. However, I believe that the State may retry Thompson for all three of the latter offenses as originally alleged in the indictment.

The majority finds the theory that Thompson was a party to the crime of burglary inapplicable, because there is no evidence that the co-defendant Ray made an unauthorized entry into the victim's house "even for the brief time leading up to the victim's shooting." (Majority opinion p. 108.) Even assuming this to be a correct assessment of the transcript, there nevertheless is evidence that Ray did enter the victim's home without authority. In his statement, Thompson told officers that "I know that Ray stepped at least into the doorway" after the shooting. Although this statement would not be admissible against Ray, it is admissible against Thompson himself. "Any references in [his] statement regarding what transpired shortly before, during, or shortly after the murder would be admissible as res gestae evidence. [Cit.]" *Garcia v. State*, 267 Ga. 257, 258 (4) (477 SE2d 112) (1996). See also *Johnson v. State*, 264 Ga. 456, 457 (1) (448 SE2d 177) (1994). Compare *Gober v. State*, 264 Ga. 226, 228 (3) (443 SE2d 616) (1994) (inculpatory reference to co-defendant redacted when introduced at a joint trial). It does not matter whether Thompson's statement was based upon his own personal observation of Ray's entry, his assessment of the scene after the shooting or what Ray subsequently told him. The statement attributes an inculpatory act to a conspirator in the furtherance of the criminal conspiracy, and, pursuant to OCGA § 24-3-52, it is admissible against Thompson, as the declarant, even though it would not be admissible against Ray under OCGA § 24-3-5. An incriminating statement made after the criminal enterprise has ended is admissible against the person who made it. *Munsford v. State*, 235 Ga. 38, 42 (218 SE2d 792) (1975). It is immaterial that the unauthorized entry by Ray into the victim's house was after, rather than before, the shooting. It is the actual occurrence, not the precise timing, of an unauthorized entry which constitutes the relevant inquiry. If Ray fired the shot first, his subse-

quent entry into the victim's house would certainly be no less unauthorized than if he had used the gun to gain entry and only then shot the victim. See *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998) (defendant guilty of burglary where the victim was first shot outside home, and then pursued inside and shot again). The evidence of a conspiracy between Thompson, Ray and the other co-defendant to commit a theft of property from the victim's home was overwhelming. Thus, there is evidence which, if believed by the jury, would authorize a finding that Thompson's co-defendant Ray shot the victim and then made an unauthorized entry into the victim's house with the intent to commit a theft therein. Insofar as commission of a burglary is concerned, it is irrelevant that Ray may have entered the victim's house only momentarily and that he stole nothing while there. *Williams v. State*, 205 Ga. App. 445 (1) (422 SE2d 309) (1992); *Mullinnix v. State*, 177 Ga. App. 168 (338 SE2d 752) (1985). In my opinion, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Thompson was a party to Ray's commission of a burglary. *Jackson v. Virginia*, supra. See *Graham v. State*, 197 Ga. App. 102 (397 SE2d 600) (1990); *Coursey v. State*, 196 Ga. App. 135 (1) (395 SE2d 574) (1990). The evidence of Ray's unauthorized entry subsequent to the shooting is not uncontradicted. At trial, Thompson testified that "[t]here was no entry ever made into that house[.]" In addressing the general grounds, however, the evidence must be construed most favorably for the State and against Thompson. The jury was entitled to reject Thompson's exculpatory trial testimony, and to believe his prior inconsistent inculpatory statement to the officers. *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982). Therefore, I disagree with Division 2, and believe that Thompson may be retried for felony murder, burglary and possession of a firearm during the commission of a crime.

DECIDED MAY 17, 1999.

*John F. McClellan, Jr.,* for appellant.
*Tambra P. Colston, District Attorney, Martha P. Jacobs, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.