**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 24, 2014**

# In the Court of Appeals of Georgia

A14A1230. STYLES v. THE STATE.

PHIPPS, Chief Judge.

In connection with a home invasion during which property was taken at gunpoint from four persons, Dominique Styles was tried by a jury, then convicted of burglary and four counts of armed robbery. In this appeal, he challenges the sufficiency of the evidence, claims he was entitled to a jury charge on robbery by intimidation as a lesser included offense of armed robbery, and contests the denial of his motion for new trial which asserted that his trial counsel had rendered ineffective assistance. We affirm.

1. Styles contends that the trial court erred by denying his motion for a directed verdict of acquittal and that his convictions are not supported by sufficient evidence.

Pursuant to *Jackson v. Virginia*,[1] "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

In its case in chief, the state showed the following. The crimes occurred at the residence of two women and one of the women's children. Their home had frequently been the site of card games. Styles had once participated in a game there. He returned on July 25, 2009, at about 10:00 p.m. The residents were at home, and their family members were visiting; collectively, the occupants numbered about twelve.

When Styles knocked on the front door and announced his name, a brother of one of the residents recognized him, opened the door, and allowed Styles to enter. Styles stepped into the living room and asked the group sitting there whether they were playing cards that night; they answered no. Styles went back to the front door, peered outside, then walked back into the living room. About ten seconds later, a man

---

[1] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] Id. at 319 (III) (B) (emphasis in original); see *Shelton v. State*, 279 Ga. 161, 162 (3) (611 SE2d 11) (2005) (explaining that the standard of review enunciated in *Jackson v. Virginia*, supra, applies whether reviewing the denial of a motion for a directed verdict of acquittal or whether determining the sufficiency of the evidence to support a conviction).

wearing a mask rushed into the residence through that same door, which had been left ajar.

The masked man pointed a gun at each adult resident and family member, ordering to the effect: "Give me everything, cell phone, money and all." The man took money from two of them. He took a cell phone from a third. From a fourth, the man took car keys, ordering her: "Take me out to the car, where the money at." The man then forced that woman to her car, which he searched; finding no money, the man took a bank envelope.

Meanwhile, one of the family members, who had escaped while the gunman was still inside, ran to a neighbor's residence and summoned police. While the gunman was outside searching the car, another family member inside the residence dialed police; and a third family member sneaked out a window and ran to a nearby apartment, where he asked residents to contact the police. Styles had initially begun "running behind" that family member; however, as another family member testified, "[Styles] could have kept going and got help, but he came back inside the house where the gunman was," then went into a bedroom and began "plundering trying to steal [a] PlayStation."

During the intervals when Styles and the gunman were both at the residence, the gunman never pointed his weapon at Styles and never ordered Styles to relinquish any property. And by the time the police arrived, neither Styles nor the gunman was still on the premises.

The gunman was later identified as Lamar Jones. Co-indicted on all counts with Styles, Jones entered a negotiated guilty plea, pursuant to which he agreed to testify for the state at Styles's trial. In his trial testimony, Jones provided details about the planning and execution of the heist. Earlier on the day in question, Styles had called him and told him about a "lick"[3] at a residence, which Styles described as a "gambling house." Jones recounted that Styles had designed a plan: "[Styles was] going to go knock on the door. As he knock on the door and get the door open, I just come behind him, and he just play like, you know. . . like I just came by myself." Jones testified that, after driving to the targeted residence, "We got out, . . . crept along side of the house. We went on around, he knocked on the door. Once he knocked I could hear him talking with somebody[,] . . . then they kind of exchanged a little bit more words." Jones recalled, "I came around, and I went in the house." Jones testified that he was wearing a mask, that he brandished a gun, and that he took

_____

[3] Jones explained at trial that "lick" was street slang for robbery.

money from two or three of the occupants. He testified that he also "escorted" one of the residents to her car, which he searched for money; he took a bank envelope, which he later discovered contained only receipts. And when he saw police approaching the area, he ran away.

On cross-examination of several of the state's witnesses, Styles's lawyer elicited testimony that during the incident, Styles had not held a gun, had not threatened anyone, and had not made any demand upon anyone.

Styles was the sole defense witness. He admitted that, prior to the night of the incident, he had been to the residence, where he had played cards and seen "[a] pretty good amount of money" change hands. He testified that when he knocked on the front door on the night in question, he was invited to come inside, and that after stepping inside, Jones came into the residence, waving a gun and demanding money.

Styles conceded that, after his initial entry into the living room, "[t]he door was never closed." Styles, who was 21 years old at the time of the incident, testified that he had known Jones since they were children. Styles admitted that Jones never pointed the gun at him nor demanded from him any money. Styles denied, however, planning with Jones the commission of any offense and testified further that, while

Jones was perpetrating the crimes, he and a resident's family member sprinted to a nearby apartment and asked someone there to contact police.

In rebuttal, the state called as a witness that family member, who recounted that after he sneaked out the window, he saw Styles already outside. Although Styles had initially begun running with him, Styles "split off"and "went some else where" – Styles was not with him when he reached the apartment nearby and asked the residents to contact police.

The indictment charged Styles and Jones with the same 25 offenses. The jury found Styles guilty of burglary of the residence, guilty of the armed robberies of four persons, and not guilty of the remaining charges (including 12 counts of possession of a firearm during the commission of a felony). As explained more fully below, Styles's challenges to the sufficiency of the evidence are without merit.

(a) *Burglary.* At the time of the underlying criminal incident, burglary was defined as follows: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[4] Styles argues that the state failed to prove the

---

[4] OCGA § 16-7-1 (a) (2009). OCGA § 16-7-1 was amended effective "July 1, 2012, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of

6

element "without authority," citing evidence that when he knocked on the front door of the residence and announced his name, he was allowed to enter by a resident's family member who was familiar with him. Styles relies upon *Thompson v. State*,[5] wherein "[the Supreme Court of Georgia] categorically reject[ed] the position that the element of an unlawful entry may be established solely by proof that an accused had the intent to commit a theft or other felony within another's premises."[6]

Styles's argument disregards language in the indictment charging him and Jones, "individually and as parties concerned in the commission of a crime, with the offense of Burglary for that the said accused . . . without authority and with the intent to commit theft, a felony, therein, did enter the dwelling house." Styles further

---

such offense." Ga. L. 2012, pp. 899, 949, §§ 3-1, 9-1. See *Gorman v. State*, 318 Ga. App. 535 (1), n. 2 (734 SE2d 263) (2012).

[5] 271 Ga. 105 (519 SE2d 434) (1999).

[6] Id. at 106 (1). Accord *Bell v. State*, 287 Ga. 670, 673 (1) (c) (697 SE2d 793) (2010) ("Even assuming that the evidence at trial showed that [the defendant] intended to commit a theft when he first entered [the] residence, there was no evidence that [he] entered the home 'without authority.'"). Cf. *State v. Newton*, 294 Ga. 767, 772 (755 SE2d 786) (2014) (determining that evidence was sufficient to show that entry of house was "without authority," where the defendant gained consent to enter home by giving fictitious name and fake driver's license).

disregards that the trial court included, in its final charge to the jury, these instructions:

> Every party to a crime may be charged with and convicted of the commission of the crime. A person is a party to the crime only if that person directly commits the crime, intentionally helps in the commission of the crime, intentionally advises, encourages, hires, counsels, or procures another to commit the crime, or intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of the crime either in fact or because of legal incapacity.[7]

The evidence showed that Styles proposed to Jones that they commit the crimes underlying this case. Styles had previously been inside the house and determined it to be a gathering place for gambling with money. Pursuant to a plan he designed, Styles gained entry into the residence, then assisted Jones's entry by returning to the door, peering outside where Jones was staged with gun and mask, then leaving that door ajar for Jones's entry. Seconds later, Jones abruptly entered through that door, then took money and property from others by use of a gun. This evidence authorized

---

[7] See OCGA § 16-2-20 (concerning "[w]hen a person is a party to a crime").

8

the jury to find beyond a reasonable doubt, under the theory of party to a crime, every essential element of the crime of burglary as to Styles.[8]

Furthermore, *Thompson* is inapposite, and thus provides no basis to disturb Styles's burglary conviction. Similar to the instant case, one of the cohorts in *Thompson* entered the home in question with the resident's permission. But unlike here, there was no competent evidence in *Thompson* that any cohort made an unauthorized entry into the home; more specifically, there was no competent evidence in *Thompson* that any one cohort gained his *unauthorized* entry by the aid of another.[9]

---

[8] See *Cargill v. State*, 256 Ga. 252, 253 (1) (347 SE2d 559) (1986) ("[A]s parties to a crime, participants may be convicted of a crime even though they are not the actual perpetrator.") (citation omitted), overruled on other grounds in *Manzano v. State*, 282 Ga. 557 (651 SE2d 661) (2007); *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003) (affirming defendant's conviction as a party to the crime of burglary because defendant drove the perpetrator to the premises, served as the getaway driver, and sped away from the scene after the burglary was committed).

[9] *Thompson*, supra at 107-109 (2) (reversing burglary conviction because the state failed to prove an entry that was "without authority," where the defendant was one of three individuals who conspired to enter residence and steal property therefrom; finding that one of defendant's cohorts entered with permission, that there was no competent evidence that defendant's second cohort entered the residence, and that the defendant "approached the residence" but did not enter, as there was no evidence that defendant "directly" committed burglary). Cf. *Bell*, supra at 672-673 (1) (a) (reversing burglary conviction for lack of evidence of an entry "without authority," where there was no indication that defendant forced his way into residence or that he was denied permission to enter and there was reason to believe that resident allowed defendant to enter and where "parties to a crime" was not a theory pursued

9

(b) *Armed Robbery*. OCGA § 16-8-41 (a) provides, "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The indictment charged Styles and Jones, "individually and as parties concerned in the commission of a crime, with the offense of Armed Robbery for that the said accused . . . did unlawfully take . . . by the use of a handgun": (i) money from one person; (ii) money from a second person; (iii) a cell phone from a third person; and (iv) keys and an envelope containing receipts from a fourth person.

The four armed robbery victims named in the indictment testified that, during the criminal episode, their respective property was taken by the masked gunman (Jones). Jones admitted taking their property at gunpoint, elaborating that the armed robberies were executed pursuant to a plan orchestrated and aided by Styles. Indeed, Jones never pointed the weapon at Styles, nor demanded Styles's property. And although Styles had successfully fled the property, he circled back to the residence – while Jones was still there – and attempted to steal electronic equipment. Before the police arrived, however, Styles (and Jones) had vanished. The state adduced sufficient

by the state).

10

evidence for the jury to find Styles guilty, under the theory of party to a crime, of four counts of armed robbery.[10]

Challenging the sufficiency of the evidence, Styles cites his testimony that he had played no role in planning the crimes, as well as testimony that he had held no gun, had made no threat, and had demanded no property from anyone. But such testimony supplies no basis for disturbing any of the armed robbery convictions.

> The jury, not this court, resolves conflicts in the testimony and weighs the evidence. And decisions regarding credibility are uniquely the province of the jury, which was not required to believe [Styles's] testimony, nor to disbelieve that of [Jones]. Where, as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdicts will be upheld.[11]

---

[10] See *Cargill*, supra; *Broyard v. State*, 325 Ga. App. 794, 797-798 (1) (b) (755 SE2d 36) (2014) (determining that evidence was sufficient to support conviction as a party to the crime of armed robbery, where the jury could infer the defendant's participation in the crime from his conduct before, during and after the crime).

[11] *Buford v. State*, 309 Ga. App. 368-369 (710 SE2d 582) (2011) (footnotes omitted).

11

2. Styles contends that the trial court erred by failing to instruct the jury on the offense of robbery by intimidation as a lesser included offense of armed robbery.[12] Styles's trial lawyer did not request an instruction on robbery by intimidation, nor did the lawyer

> object to the court's failure to include such [an instruction] before the jury retired to deliberate. Accordingly, pursuant to [the] recent decision in *State v. Kelly*,[13] and OCGA § 17-8-58 (b), we review this enumeration of error only to determine whether the court's failure to include a specific instruction on [robbery by intimation] constitutes plain error.[14]

To demonstrate plain error under the four-pronged test adopted in *Kelly*,[15] Styles must show that "[the failure to give] the instruction was erroneous, the error was obvious, [the lack of] the instruction likely affected the outcome of the proceedings, and the

---

[12] OCGA § 16-8-41 (a) provides, "The offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery."

[13] 290 Ga. 29 (718 SE2d 232) (2011).

[14] *Allen v. State*, 290 Ga. 743, 744-745 (3) (723 SE2d 684) (2012) (footnote omitted).

[15] Supra at 33 (2) (a).

12

error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."[16]

> The complete rule with regard to giving a . . . charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.[17]

(a) For each of the four counts of armed robbery, the state presented evidence that established all the elements of the crime.[18] Styles denied committing any offense, and in support of his defense, he testified that he played no role in any robbery and adduced testimony that he had neither held a gun nor demanded anyone's property. The evidence relied upon by Styles, however, does not show robbery by

---

[16] *Murray v. State*, 295 Ga. 289, 294 (3) (759 SE2d 525) (2014) (citation and punctuation omitted); see *Kelly*, supra (enumerating the four prongs of the plain error standard).

[17] *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994) (citation and emphasis omitted).

[18] See Division 1 (b), supra.

intimidation;[19] indeed, "no evidence was presented that [a] robbery was committed without the use of a gun."[20] "Where, as here, the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense."[21] Therefore, the trial court's "failure to charge on robbery by intimidation was not error because the evidence did not *demand* a charge on that offense."[22] And without the

---

[19] Cf. *Edwards*, supra at 132-133 (concluding that the appellant, charged with armed robbery at a residence, was entitled to a jury charge on lesser included offense of theft by taking, where appellant's police statement recounted that he had broken into the residence to steal drugs and money, but that the guns discovered at the residence by police were not his and were already at the residence when he arrived).

[20] *Hopkins v. State*, 227 Ga. App. 567, 568 (1) (489 SE2d 368) (1997), overruled on other grounds, *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999).

[21] *Mason v. State*, 267 Ga. 314, 315 (3) (477 SE2d 568) (1996) (citation and punctuation omitted); see *Clark v. State*, 279 Ga. 243, 247 (7) (611 SE2d 38) (2005) ("Where, as here, the evidence in the record shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense.") (citation and punctuation omitted); *Hopkins*, supra at 567-568 (1) (concluding that, because the evidence proved the defendant guilty as a party to the crime of armed robbery and there was no evidence that the robbery was committed without the use of a gun, the trial court did not err in failing to instruct the jury on the lesser included offense of robbery).

[22] *Holcomb v. State*, 230 Ga. 525, 527 (198 SE2d 179) (1973) (emphasis in original); see *Clark*, supra; *Hopkins*, supra.

requisite showing of trial court error, Styles cannot satisfy the four-prong test for plain error adopted in *Kelly*.[23]

(b) Styles argues further that the jury's return of "not guilty" verdicts on all 12 counts of possession of a firearm during the commission of a felony illustrates that, had the jury been instructed on robbery by intimidation, it would have convicted him of that lesser included offense, rather than of armed robbery.

This argument does not establish plain error under *Kelly*.[24] Furthermore, "[Style's] reliance on the not guilty verdict[s] . . . is misplaced, as this [c]ourt will not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity."[25]

---

[23] Supra.

[24] See text accompanied by footnote 14, supra.

[25] *Allaben v. State*, 294 Ga. 315, 320 (2) (a) (3) (751 SE2d 802) (2013) (citations and punctuation omitted); see *Dennis v. State*, 263 Ga. 257, 259 (3) (430 SE2d 742) (1993) (rejecting appellant's argument that "because the jury found him not guilty of the charge of possession of a firearm during the commission of a felony which followed the first armed robbery charge, and guilty of the armed robbery charge, the verdicts are inconsistent and therefore erroneous"; reiterating, "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.").

15

3. Styles contends that the trial court erred by denying his motion for new trial, maintaining that his trial counsel rendered ineffective assistance.

> In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. Upon appellate review of that claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[26]

(a) Styles claims that his trial lawyer performed deficiently by failing to request a jury instruction on robbery by intimidation as a lesser included offense of the armed robbery counts. Again citing the not guilty verdicts on the firearm possession charges, Styles asserts that the requisite prejudice was demonstrated.

Styles called his trial lawyer to the stand at the hearing on the motion for new trial, but did not ask the lawyer why no such instruction had been requested. We thus presume that his lawyer elected not to request the instruction as a matter of trial

---

[26] *Colzie v. State*, 289 Ga. 120, 124 (3) (710 SE2d 115) (2011) (citations and punctuation omitted); see *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

strategy.[27] As the record reflects, the defense strategy pursued at trial was to show that Styles had nothing to do with Jones's criminal conduct – not that Styles had participated in robbery, but without the use of a gun. In employing this "all or nothing" strategy, Styles testified that he was at the residence merely as a guest and that Jones alone had perpetrated the crimes; Styles sought to corroborate his version of events by eliciting testimony from several state witnesses that he had not participated in any of Jones's acts.

Furthermore, Styles's trial lawyer testified at the motion for new trial hearing that before trial, he had discussed with Styles the potential defenses. Although in hindsight, Styles may question whether the chosen defense strategy backfired, that does not render the strategy unreasonable.[28] Given the foregoing, we conclude that

---

[27] *State v. Worsley*, 293 Ga. 315, 325 (4), n. 10 (745 SE2d 617) (2013) (citing *Williams v. Head*, 185 F3d 1223, 1228 (11th Cir. 1999), for the proposition that "where the record is incomplete or unclear about [trial counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment"); *Mathis v. State*, 293 Ga. 837, 840 (3) (750 SE2d 308) (2013) ("In the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim.") (citation and punctuation omitted).

[28] See *Jimmerson v. State*, 289 Ga. 364, 368-369 (2) (a) (e) (711 SE2d 660) (2011).

Styles failed to carry his burden of showing that pursuing the "all or nothing" strategy was unreasonable; thus, no deficient performance was established.[29]

(b) Styles charges his trial counsel with deficient performance for failing to call as a trial witness an individual who had knowledge of what he claims were material facts. Styles called this individual at the motion for new trial hearing, and the following transpired:

> Q: Are you aware of the events that took place on July 25, 2009, dealing
> with an armed robbery here in [this] County?
> A: Yes, sir.
> Q: . . . I'm going to ask you, are you aware or did you have knowledge
> of anything regarding this incident prior to it taking place?
> A: No. On that day I was in the Hill Street, and me, [Jones] and another
> guy by the name of Mike and two of my cousins and I, and they was
> talking about going to [the residence in question]. He left us earlier and
> went, and he came back and said it was a good bit of peoples there, and

---

[29] See id.; *Davis v. State*, 287 Ga. App. 786, 788-789 (2) (653 SE2d 104) (2007) ("[The] decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial strategy," and reasonable trial strategy, whether wise or unwise, generally does not amount to ineffective assistance of counsel.); see further *Strickland,* supra at 690 (III) (A) (espousing that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); *Mathis*, supra (reiterating that to demonstrate deficient performance, "appellant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance").

18

so I reckon he waited until dark, so the next day I found out what had happened.

. . .

Q: And was this the home involved in the robbery?

A: Yes, sir.

Q: Was [Styles] involved in those discussions?

A: He wasn't on the scene.

Q: He was not even there?

A: He wasn't there.

Q: This was prior to the robbery taking place; is that correct?

A: Yes, it happened later that night.

That testimony, as Styles's post-conviction lawyer argued at the hearing, would have impeached Jones's testimony that committing the crimes had been Styles's idea.

But at that hearing, Styles's trial lawyer testified that he had no recollection of that individual and that Styles had not discussed with him any such potential witness prior to trial. In its order, the trial court expressly found the lawyer's testimony credible. Although Styles testified at the hearing that he had told his lawyer before trial about this potential trial witness, "[t]he trial court was authorized to believe counsel's testimony over his."[30] Giving deference to the trial court's finding, we

---

[30] *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005) (citation omitted).

19

conclude that Styles's trial "counsel cannot possibly have performed deficiently by having failed to present testimony of which [Styles] had never made him aware."[31]

(c) Styles complains that his trial lawyer neither retrieved the recordings of the 911 calls, nor "investigate[d] into the person or persons who called 911 from the nearby apartments." But at the motion for new trial hearing, Styles presented no evidence of either a 911 recording or how any person involved in a 911 call could have aided his defense. His speculation as to what might have been revealed falls short of establishing prejudice.[32]

---

[31] *Lewis v. State*, 294 Ga. 526, 529 (755 SE2d 156) (2014) (citation omitted).

[32] See *Crowder v. State*, 294 Ga. 167, 169-170 (3) (751 SE2d 334) (2013) ("At the motion for new trial hearing, either the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony. . . . Without making any such evidentiary showing at the motion for new trial hearing, appellant cannot establish a reasonable probability that the outcome of his trial would have been different.") (citations omitted)); *Brown v. State*, 293 Ga. 518, 519 (2) (748 SE2d 388) (2013) ("Speculation that [an individual] could have given testimony favorable to the defense does not establish prejudice."); *Walker v. State*, 288 Ga. 174, 179-180 (702 SE2d 415) (2010) (holding that the defendant did not prove prejudice when he "presented no evidence at the motion for new trial hearing to support his bald assertion that there was a reasonable probability that the outcome of the proceeding would have been different"); *McIlwain v. State*, 287 Ga. 115, 118 (5) (694 SE2d 657) (2010) (concluding that because potential trial witnesses did not testify at motion for new trial hearing, appellant failed to show that their testimony would have been relevant and favorable, and thus appellant did not demonstrate that counsel's performance was constitutionally flawed); *McDaniel*, supra at 802-803 (2) (c), (d).

We find no merit in Styles's contention that the ineffectiveness of his trial counsel entitles him to a new trial.

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*