301 Ga. 94
FINAL COPY

S17A0301.  JONES v. THE STATE.

PETERSON, Justice.

Following a jury trial, Willie Clifford Jones was convicted of felony murder for the death of his four-year-old daughter, Ty'Asia Michelle Phillips.[1] He appeals on the sole ground that he was convicted by general verdict on a count of felony murder that contained two predicates, one of which, he claims, there was insufficient evidence to support.  Because we find that there was sufficient evidence to convict Jones of felony murder based on one of the two charged predicates for felony murder, and that this is enough to sustain his conviction, we affirm.

---

[1] The crime occurred in March 2012.  In an indictment returned on September 17, 2013, a Richmond County grand jury charged Jones with malice murder and felony murder (the latter based on predicates of cruelty to children in the first degree and cruelty to children in the second degree).  At a September 2013 trial, a jury acquitted Jones of malice murder and found him guilty of felony murder.  The trial court sentenced him to life without parole.  Jones filed a motion for a new trial on October 1, 2013, which he amended via appellate counsel on June 2, 2015.  After a hearing, the trial court denied the motion on July 17, 2015.  Jones filed a timely notice of appeal, and the case was docketed to this Court for the term beginning in December 2016 and submitted for a decision on the briefs.

Viewed in the light most favorable to the verdict, the trial evidence showed the following:

When Ty'Asia was four years old, Ty'Asia's mother, Chelsea Phillips, made arrangements for Ty'Asia to stay with Jones beginning in late February 2012. Phillips and her mother testified that the child did not have any injuries of concern when they left her with Jones. Emerson Cohen testified that he visited Jones's trailer on multiple occasions during Ty'Asia's visit, and, although the child reported that her father had spanked her, Cohen did not observe the girl to have any bruising and saw her running around playing with other children as late as the evening of March 10. Clerks at a nearby convenience store also testified that they saw the girl on the afternoon of March 9 and the morning of March 11 and did not observe her to have any disabilities or injuries.

Jones called Cohen the evening of Sunday, March 11, crying and saying that he could not get Ty'Asia to wake up. Cohen urged Jones to call 911. A cousin of Jones, Nolan Hogues, testified that he came by to visit that night and found Jones sitting in the living room, crying, with his daughter in his lap.

2

Jones reported that his daughter would not wake up. Hogues testified that the child was breathing but unresponsive and limp when he picked her up. Hogues testified that he directed Jones to call an ambulance, and Jones complied.

Paramedics arrived and found Ty'Asia unresponsive. While in the paramedics' care, Ty'Asia's respiratory rate started to decline, and the paramedics had to breathe for her manually through a bag mask valve. She also drew up into a fetal position before arching her back and pointing her toes down, which a paramedic testified was a sign of head trauma. Law enforcement who responded to the hospital where Ty'Asia was taken testified that the girl had marks and bruises all over her body, including her head, and including what one investigator described as an apparent older burn injury in a pattern like a railroad track on her back.

At Jones's trailer, law enforcement found a portable heater with a front panel that had a pattern consistent with the marks found on Ty'Asia's back. They found window blinds that were missing the rod used to open and close the blinds, and found components of the rod at various locations around the house. They also found a broken belt in a washing machine and pieces of cord.

3

Investigator Mark Dobbins interviewed Jones at the hospital. Initially, Jones denied ever spanking or whipping Ty'Asia. Jones told Dobbins that Ty'Asia had simply collapsed and stopped responding after a day of playing outside, which Jones later admitted to Dobbins was false. Jones ultimately told Dobbins that he hit Ty'Asia with a "blind twister" and his shoe and that she might have been hit in the head accidentally by the blind twister or the shoe because she moved around. Jones also said she might have hit her head on a shelf while he was attempting to spank her. Jones said Ty'Asia fell on the heater when they were in an altercation.

Ty'Asia died on March 18, 2012. The GBI's medical examiner testified that Ty'Asia's death was caused by traumatic head injuries caused by another person or persons, with other injuries possibly contributing to a minor degree. He testified that the head injuries Ty'Asia suffered would not have resulted from roughhousing with other children. He testified that the sort of head injury she suffered would have immediately rendered her unconscious or nearly so and that the head injury would have been inflicted just before she was hospitalized.

Jones testified at trial that on the weekend in question, he played video

4

games and smoked marijuana while Ty'Asia played with other children outside. Jones denied hitting Ty'Asia and said that he falsely told Dobbins that he had because he was tired and overwhelmed and wanted Dobbins to go away. On cross-examination, Jones said that he had "whooped" Ty'Asia and "kind of" had lied when he testified that he did not whip her.

The jury acquitted Jones of malice murder and returned a guilty verdict on a single count of felony murder. The indictment charged Jones with felony murder based on two predicates, that he committed cruelty to children in the first degree and that he committed cruelty to children in the second degree. Specifically, the sole count of felony murder charged that Jones caused Ty'Asia's death "by maliciously and with criminal negligence" causing the child "cruel and excessive mental and physical pain" by beating her and by throwing her into a piece of furniture, onto the floor and into a space heater. The jury was instructed on each of the underlying offenses. The verdict form did not specify which predicate felony was the basis for the finding of guilt on the felony murder count.

1. Jones argues on appeal that he is entitled to a new trial because he was

5

convicted by general verdict on a count of felony murder predicated on cruelty to children in the first degree and cruelty to children in the second degree, and there was insufficient evidence to support the predicate of cruelty to children in the second degree. Without deciding whether there was sufficient evidence to support the second degree child cruelty predicate, we conclude that he would not be entitled to a new trial even if he were right that there was sufficient evidence to support a conviction based on only one of the two predicate offenses.

Jones does not dispute that there was sufficient evidence to support a conclusion that he committed the crime of first degree cruelty to children, which, as that predicate was charged in the indictment, required a showing of malice. See OCGA § 16-5-70 (b). Instead, he contends that the evidence was insufficient to support a conclusion that he committed the crime of second degree cruelty to children, which requires a mens rea of criminal negligence. See OCGA § 16-5-70 (c). He relies on two decisions by the Court of Appeals of Georgia in which the court found a reckless conduct charge unwarranted because the evidence of child abuse established that the defendants' actions

6

were intentional, not criminally negligent. See Glover v. State, 292 Ga. App. 22, 28-30 (5) (a) (663 SE2d 772) (2008); Allen v. State, 247 Ga. App. 10, 14-15 (3) (543 SE2d 45) (2000). Citing Thompson v. State, 271 Ga. 105 (519 SE2d 434) (1999), Jones argues that because the jury might have based its guilty verdict on the unproven predicate of second degree cruelty to children, the verdict must be set aside.

In Thompson, we reversed a felony murder conviction after finding that the defendant's conviction for one of the three predicate offenses on which the felony murder charge was based must be set aside due to an improper jury instruction. Id. at 106-109 (1), (2). Citing Stromberg v. California, 283 U.S. 359 (51 SCt 532, 75 LE 1117) (1931), and several of our own subsequent decisions, we said reversal of the felony murder conviction was required "because the general verdict of guilty did not indicate which of the alternate theories the felony murder conviction was based upon[.]" Id. at 108-109 (2). In order to understand Thompson, we must understand the U.S. Supreme Court decision on which it was based and how that Court has treated that decision subsequently.

The <u>Stromberg</u> Court held that if a jury is instructed that it may convict a defendant on any one of several theories, one of which is unconstitutional, a general verdict of guilty that does not indicate it was based upon one of the constitutional theories must be set aside. 283 U.S. at 367-370. The U.S. Supreme Court extended that rule in <u>Yates v. United States</u>, 354 U.S. 298 (77 SCt 1064, 1 LE2d 1356) (1957), overruled in part on other grounds by <u>Burks v. United States</u>, 437 U.S. 1 (98 SCt 2141, 57 LE2d 1) (1978), to require a conviction be set aside when one of multiple possible bases for a conviction is legally inadequate even in some non-constitutional sense, such as when one of the charged objects of a conspiracy is time-barred. Id. at 312. And we have relied on <u>Stromberg</u> and its progeny to reverse convictions where one of multiple possible bases for the jury's guilty verdict was premised on an erroneous jury instruction, see <u>Thompson</u>, 271 Ga. at 108 (2); <u>Dunagan v. State</u>, 269 Ga. 590, 594-595 (3) (502 SE2d 726) (1998), or where one of multiple possible bases for the guilty verdict was not properly charged in the indictment, see <u>Kevinezz v. State</u>, 265 Ga. 78, 83 (2) (d) (454 SE2d 441) (1995); <u>Crawford v. State</u>, 254 Ga. 435, 438-439 (1) (330 SE2d 567) (1985).

8

But 60 years after Stromberg, the Supreme Court limited Stromberg and Yates, making clear that a guilty verdict need not be set aside merely because one of multiple possible bases of conviction is unsupported by sufficient evidence. See Griffin v. United States, 502 U.S. 46, 56 (112 SCt 466, 116 LE2d 371) (1991). The Court explained in Griffin that at common law, "a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds — even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." Id. at 49. The Court explained that Stromberg "do[es] not necessarily stand for anything more than the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." Id. at 53. The Court questioned Yates's "unexplained extension" of that rule to a possible basis for a general verdict that did not violate any provision of the Constitution but was simply legally inadequate (in that case, due to a statutory time bar). Id. at 55-56. But the Court did not overrule Yates, saying the Court's continued adherence to Yates was not at issue there. Id. at 56. Instead, the Court drew

a distinction between circumstances in which one of multiple possible bases for a guilty verdict was contrary to law and circumstances in which one of the bases for a guilty verdict was a factually inadequate theory. See id. at 59. In the former scenario, the Court said, there is no reason to think that jurors' own intelligence and expertise would have saved them from possibly relying on that legally inadequate theory; in the latter scenario, courts should not presume that a general verdict rests on a ground that the evidence does not support, as jurors are well equipped to analyze evidence. Id. at 59-60; see also Sochor v. Florida, 504 U.S. 527, 538 (112 SCt 2114, 119 LE2d 326) (1992). As the Court had noted more than 20 years earlier, "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Turner v. United States, 396 U.S. 398, 420 (90 SCt 642, 24 LE2d 610) (1970).

Our decision in Thompson does not require a different result. In Thompson, the appellant was charged with a single count of felony murder based on three underlying felonies, including burglary. Id. at 108 (2). The jury

10

returned a general verdict on the felony murder count without delineating which of the underlying felonies served as the predicate for the felony murder conviction. Id. On appeal, we held that the trial court erred in charging the jury on the offense of burglary and that the evidence was insufficient to support a verdict of guilt on that charge, and we reversed that conviction. Id. at 106-108 (1), (2). Citing Stromberg, and noting that the general verdict of guilty on the felony murder charge did not indicate on which of the alternative theories the verdict was based, we set aside the felony murder conviction, as well. Id. at 108 (2). Contrary to Jones's characterization of our decision in Thompson, it is clear that we reversed the felony murder conviction not because there was insufficient evidence to support one of its possible predicates but because one of those predicates was premised on an erroneous jury instruction. Although we analyzed the sufficiency of the evidence on the burglary charge, we did so to determine (1) whether the jury instruction error was harmless and (2) whether the defendant could be retried on that charge.[2] We have never cited

_____

[2] Notably, we affirmed the defendant's conviction for possession of a firearm by a convicted felon on the basis that it was highly probable that the jury instruction error did not contribute to the verdict on that charge. Thompson, 271 Ga. at 109 (2). This invocation of the standard for evaluating whether a non-constitutional error was harmless underscores the nature

11

Thompson to reverse a guilty verdict for the sole reason that one of multiple possible bases of conviction was unsupported by sufficient evidence. Jones cannot obtain reversal under the Stromberg/Griffin line of cases on the basis that there was insufficient evidence for the jury to find him guilty of felony murder based on his commission of the crime of cruelty to children in the second degree, as long as there was sufficient evidence for the jury to find him guilty of felony murder based on his commission of the crime of first degree child cruelty.[3]

2. Jones effectively has conceded that there was sufficient evidence to support a conclusion that he committed the crime of first degree cruelty to children. Having independently reviewed the record, we find that Jones's concession is well founded. "Any person commits the offense of cruelty to

_____

of the task we performed in Thompson.

[3] We note that we have some case law predating Stromberg that may provide an independent basis for invalidating a general verdict of guilty when one of multiple possible bases for the verdict is not supported by sufficient evidence. See Driver v. State, 112 Ga. 229 (37 SE 400) (1900); Simmons v. State, 162 Ga. 316 (134 SE 54) (1926). The legal source of this case law is unclear, but in any event it affords no relief to Jones. If the Driver line of cases is rooted in due process (the only issue that Jones actually raises by citing Thompson), the Supreme Court's decision in Griffin superseded Driver and offers Jones no help. If the Driver line of cases has some other legal basis, then Jones has failed to raise that issue at all, and the issue is not properly before us for decision. Given its inapplicability here, we offer no opinion as to Driver's basis or its continuing validity.

12

children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b). Malice means "an actual intent to cause a particular harm" — in this context, cruel or excessive physical or mental pain — or "the wanton and willful doing of an act with awareness of a plain and strong likelihood" that this particular harm may result. See Sears v. State, 290 Ga. 1, 3 (3) (717 SE2d 453) (2011) (approving instruction) (punctuation omitted); see also Jones v. State, 300 Ga. 814, 816-819 (2) (797 SE2d 461) (2017) (jury's acquittal of defendant on malice murder does not preclude finding that defendant had the requisite mens rea for first degree child cruelty). The evidence, as outlined above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Jones beat Ty'Asia while either intending to cause her cruel or excessive physical or mental pain or acting in a wanton or willful fashion with awareness of a plain and strong likelihood that such harm would result and that such actions caused Ty'Asia's death. The evidence thus was sufficient under the standard of Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), to support a felony murder conviction based on the

13

predicate of first degree cruelty to children.

Judgment affirmed. All the Justices concur.

Decided May 1, 2017.

Murder. Richmond Superior Court. Before Judge Craig.

Tyler R. Conklin, James C. Bonner, Jr., for appellant.

R. Ashley Wright, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.